In the

# United States Court of Appeals

### For the Seventh Circuit

No. 02-2298

ESTHER L. GAYMAN,

*Plaintiff-Appellant*,

v.

PRINCIPAL FINANCIAL SERVICES, INC.,
PRINCIPAL FINANCIAL GROUP, INC.,
and PRINCIPAL LIFE INSURANCE COMPANY,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 01 C 50346—**Philip G. Reinhard**, *Judge*.

ARGUED NOVEMBER 7, 2002—DECIDED NOVEMBER 22, 2002

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Principal Life Insurance Co. converted from mutual to stock form in 2001. Although the insurer itself had converted in 1998, it became a wholly owned subsidiary of Principal Mutual Holding Co., which remained a mutual. This left the policyholders with voting control and the right to receive any surplus should the insurer liquidate, but it saddled the firm with a major drawback—inability to raise capital via the stock market. In the 2001 reorganization all vestiges of the mutual form

vanished. Conversion was authorized unanimously by the holding company's board of directors (elected by the policyholders) and ratified by 92% of those policyholders who participated in the vote. Iowa, under whose law the firms are organized, permits demutualization if the policyholders and the Commissioner of Insurance approve. See Iowa Code §§ 508B2, 521A.14(5)(b). Administrative approval was given on August 28, 2001, and the conversion occurred on October 26, 2001.

Dissenting policyholders could have sought judicial review of the Commissioner's decision under Iowa law but did not. They might have asked the state courts to review the transaction for compliance with state law but did not. Instead policyholder Esther Gayman filed this suit in federal court, purportedly under 42 U.S.C. §1983, against the insurer and its new parent corporations. (The suit also named as defendants the old holding company and other firms that vanished in the transaction. Their rights and liabilities have been assumed by the surviving firms. We have reformed the caption to list only the extant entities.) According to the complaint, defendants violated the federal Constitution in numerous ways, all of which are variations on the theme that they took the policyholders' "property" (the right to receive any liquidating distribution) without just compensation. But a claim under §1983 is tenable only if the defendants acted under color of state law—in other words, if they are state actors. See *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). The district judge concluded that they are not and dismissed the suit under Fed. R. Civ. P. 12(b)(1), for it cannot be recast as a state-law claim under the diversity jurisdiction (Gayman does not contend that her extinguished rights were worth more than $75,000).

According to Gayman, the insurer and its holding-company structure are state actors for two reasons: first, they took advantage of provisions in state law that authorized

the conversion (and, she says, valued her interest below its true worth); second, they sought and obtained permission from the Commissioner of Insurance. Neither of these elements, however, demonstrates state action. The impetus and the actors remain private. That "a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974). See also, e.g., *Blum v. Yaretsky*, 457 U.S. 991 (1982); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978). Nor does the need to obtain official approval turn private action into public action. See, e.g., *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40 (1999). Putting state regulation together with official approval does not affect the outcome: $0 + 0 = 0$.

If things were otherwise, most if not all private acts would be attributed to the state and subject to constitutional limitations—even though these limitations are designed to protect people from government rather than from each other. See *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989); *Archie v. Racine*, 847 F.2d 1211 (1988) (en banc). All corporate management is subject to control under state law (including judicial review of managers' competence and loyalty); some decisions require advance approval; yet it would be preposterous to say that all corporate acts therefore are state acts. One might as well contend that all lawyers' deeds are state action because lawyers have licenses and are subject to regulation on ethics and other subjects, or that all landlords are state actors because buildings must conform to zoning and safety codes.

A *real* state actor was involved in the demutualization: Iowa's Commissioner of Insurance. But she has not been sued, perhaps because any claim that the Commissioner took Gayman's property would be frivolous. See *Ordower v. Office of Thrift Supervision*, 999 F.2d 1183, 1187 (7th

Cir. 1993). The transaction was initiated and ratified by the policyholders. Iowa did not compel any mutual to convert; it just made reorganization possible, as state corporate law facilitates mergers. Until early in the Twentieth Century mergers required unanimous consent, and in many states corporate charters were special legislative grants. Today anyone can incorporate and mergers may be approved by majority vote. Those legal changes, which facilitate private ordering, did not turn corporations into state actors. Instead they enlarged the scope of private law. Just so for mutual-to-corporate conversions. If the opportunity to buy securities at a discount (the normal replacement for policyholders' residual claims, see *Ordower* and, e.g., *SEC v. Jakubowski*, 150 F.3d 675 (7th Cir. 1998)) was inadequate here, the proper remedy was a suit in state court under state law seeking an order blocking the conversion or altering its terms.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*