Stephen **TANCREDI** and Ronald Speidel, Plaintiffs–Appellants,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, a New York stock company and Metlife, Inc., a Delaware Holding Company, Defendants–Appellees.**

**Docket No. 01–7888.**

United States Court of Appeals, Second Circuit.

Argued: June 5, 2002.

Decided: Jan. 21, 2003.

James M. Pietz, Pittsburgh, Pennsylvania (Michael P. Malakoff, Malakoff Doyle & Finberg, Pittsburgh, Pennsylvania, Peter Wasylyk, Providence, Rhode Island, on the brief), for Plaintiffs–Appellants.

Bruce E. Yannett, New York, New York (Carl Micarelli, Debevoise & Plimpton, New York, New York, Colby A. Smith, Debevoise & Plimpton, Washington, D.C., Duncan J. Logan, Metropolitan Life Insurance Company, New York, New York, on the brief), for Defendants–Appellees.

Before: KEARSE and McLAUGHLIN, Circuit Judges, and DANIELS, District Judge.*

KEARSE, Circuit Judge.

Plaintiffs Stephen Tancredi and Ronald Speidel appeal from a judgment of the United States District Court for the Southern District of New York, Lewis A. Kaplan, *Judge*, dismissing their claims, brought under 42 U.S.C. § 1983 (2000), that the conversion of defendant Metropolitan Life Insurance Company ("MetLife") from a mutual to a stock life insurance company in accordance with New York Insurance Law, *see* N.Y. Ins. Law § 7312 (McKinney 2000), violated their rights under the Takings Clause, the Contracts Clause, the Due Process Clause, and the Commerce Clause of the United States Constitution. The district court granted the motion of MetLife and its parent, defendant Metlife, Inc., a Delaware holding company ("MetLife Holding"), to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted, ruling principally that the complaint's allegations were insufficient to show state action, and, alternatively, that the allegations were insufficient to show interference with plaintiffs'

property or contract rights or with interstate commerce. Plaintiffs challenge these rulings on appeal. For the reasons that follow, we affirm the dismissal on the ground that the complaint failed to allege facts that, if proven, would establish that defendants acted under color of state law.

## I. BACKGROUND

The complaint, whose factual allegations are taken as true for purposes of reviewing a dismissal for failure to state a claim, alleged the following events. MetLife was chartered by the State of New York ("State") in 1915 to do business as a mutual life insurance company, *i.e.*, a company whose policyholders have membership interests entitling them generally to vote at company meetings and to share equitably in dividends declared by the company's board of directors. Tancredi and Speidel were members of that mutual company.

Section 7312 of the New York Insurance Law, enacted in 1988, permits a State-chartered mutual life insurance company to reorganize into a domestic stock life insurer if certain prerequisites are met. *See* N.Y. Ins. Law § 7312. In order to accomplish such a reorganization, the insurer must adopt "a plan which must be fair and equitable to the policyholders." *See id.* § 7312(d). The reorganization plan must set forth, *inter alia*, the purpose and form of the reorganization, the process by which the reorganization will occur, and the consideration to be given to the policyholders in exchange for their membership interests in the mutual company. *See id.* § 7312(e). The mutual company's policyholders must be given notice and a copy of the plan, along with such other information as may be required by the Superintendent of the State's Department of Insurance

---

* Honorable George B. Daniels, United States District Judge for the Southern District of New York, sitting by designation.

("Superintendent"). *See id.* § 7312(k)(1). To be carried out, the reorganization must be approved by the votes of two-thirds of the policyholders voting, *see id.* § 7312(k)(2), and by the Superintendent, *see id.* § 7312(j).

In September 1999, MetLife's board of directors adopted a plan of reorganization ("Plan" or "Reorganization Plan") to convert MetLife from a mutual insurance company into a stock insurance company that would be a wholly owned subsidiary of MetLife Holding. The Plan provided that policyholders' membership interests in the mutual company would be converted into cash, policy credits, or stock in MetLife Holding. The stock of MetLife Holding would be publicly traded. MetLife notified the Superintendent of the Plan and of subsequent modifications of the Plan. MetLife sent its policyholders copies of the Reorganization Plan and other materials, notified them of the voting period, and informed them that the Superintendent would hold a public hearing on the Plan prior to the vote.

The Superintendent held a public hearing on the MetLife Reorganization Plan in January 2000. When the voting period ended on February 7, 2000, more than 93% of the policyholders voting had voted in favor of the reorganization.

Section 7312 also allows a company to amend its reorganization plan after it has been approved by the requisite number of policyholders, but only if the Superintendent finds that the amendments do not materially disadvantage any policyholder. *See id.* § 7312(f). In March 2000, MetLife amended its Plan to allow private placements of common stock concurrently with the planned initial ·public offering. The Superintendent conducted legal, financial, actuarial, and accounting analyses of the MetLife Plan and its amendments, and reviewed the comments received from policyholders. In April 2000, the Superinten-

dent found that the proposed reorganization did not violate any applicable law, was fair and equitable to policyholders, and was not detrimental to the public. The Superintendent also found that the amendment made to the Plan subsequent to the policyholder vote would not be materially disadvantageous to the interests of policyholders. The Superintendent therefore officially approved the MetLife reorganization. Thereafter, MetLife implemented the Plan.

Tancredi and Speidel promptly commenced the present action under 42 U.S.C. § 1983, alleging that the implementation of the Reorganization Plan violated their rights, and those of all similarly situated policyholders of the mutual company, under the Takings Clause of the Fifth and Fourteenth Amendments and under the Commerce and Contracts Clauses of Article I, on the ground that policyholders had received less than the fair market value of their membership interests at the time of the reorganization. The complaint alleged, *inter alia,* that MetLife had acted under color of state law in proposing and implementing the Plan (*see* Complaint ¶ 30); that the Superintendent was a joint participant in MetLife's decision to reorganize and in determining the value of the policyholders' contractual and voting interests (*see id.* ¶¶ 31–32); and that "[t]he decision whether the Company could demutualize, as required under state law, was a joint/state [*sic*] private actor decision" (*id.* ¶ 33).

Defendants moved to dismiss the complaint for failure to state a claim, arguing principally that they were private actors and that the. complaint lacked any sustainable allegation that there was state action, an essential component of an action under § 1983. Defendants also argued that plaintiffs could not establish that their membership interests in the mutual com-

pany constituted property, that their contractual rights had been unconstitutionally impaired, or that the MetLife Reorganization Plan violated the dormant Commerce Clause of the Constitution. Defendants argued further that plaintiffs' Commerce Clause challenge to the State laws permitting insurers to reorganize was foreclosed by the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015.

In an opinion reported at 149 F.Supp.2d 80 (2001), the district court granted the motion to dismiss, ruling principally that the complaint failed to show state action. The district court also found merit in defendants' other challenges.

Judgment was entered dismissing the complaint, and this appeal followed.

## II. DISCUSSION

On appeal, plaintiffs contend that the district court erred in ruling that their complaint did not sufficiently allege state action, arguing that the Superintendent's review and approval of MetLife's plan of reorganization under the standards set by § 7312 constituted state compulsion, significant encouragement and participation by the State, a delegation of the public taking power, and the entwinement of the State in the management of MetLife. They also contend that the complaint sufficiently alleged impairment of their contract or property rights, and violation of the dormant Commerce Clause. For the reasons that follow, we conclude that the district court correctly dismissed the complaint for lack of a sufficient allegation of state action, and we affirm on that ground.

■ Section 1983 of 42 U.S.C. provides, in pertinent part, that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action. *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (" 'In cases under § 1983, "under color" of law has consistently been treated as the same thing as the "state action" required under the Fourteenth Amendment.' " (quoting *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966))); *United States v. International Brotherhood of Teamsters,* 941 F.2d 1292, 1295 (2d Cir.1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' ").

■ When analyzing allegations of state action, we begin "by identifying the specific conduct of which the plaintiff complains." *American Manufacturers Mutual Insurance Co. v. Sullivan,* 526 U.S. 40, 51, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (internal quotation marks omitted). In order to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be "fairly attributable" to the state. *Id.* at 50, 119 S.Ct. 977. Conduct that is ostensibly private can be fairly attributed to the state only if there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' " *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (quoting *Jackson v.*

*Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). State action may properly be found where the state exercises "coercive power" over, is "entwined in [the] management or control" of, or provides "significant encouragement, either overt or covert" to, a private actor, or where the private actor "operates as a willful participant in joint activity with the State or its agents," is "controlled by an agency of the State," has been delegated a "public function" by the state, or is "entwined with governmental policies." *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. at 296, 121 S.Ct. 924 (internal quotation marks omitted). The management of a corporation is not a public function; and a state's permission for a corporation to organize itself in a particular manner is not the delegation of governmental authority. *See, e.g., Gayman v. Principal Financial Services, Inc.*, 311 F.3d 851 (7th Cir.2002) (affirming dismissal of constitutional challenge to demutualization of former mutual insurer's parent company for lack of state action).

■ State approval of an action by a regulated entity does not constitute state action "where the initiative comes from [the private entity] and not from the State" and the state "has not put its own weight on the side of the proposed practice by ordering it." *Jackson v. Metropolitan Edison Co.*, 419 U.S. at 357, 95 S.Ct. 449. "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. at 52, 119 S.Ct. 977; *see also Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 164, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) ("This Court … has never held that a State's mere acquiescence in a private action converts that action into that of the State."). Thus, a regulatory agency's performance of routine oversight functions to ensure that a company's conduct complies with state law does not so entwine the agency in corporate management as to constitute state action. *See, e.g., Cranley v. National Life Insurance Co.*, 318 F.3d 105 (2d Cir.2003) (two-step demutualization of a life insurance company as authorized by Vermont law does not constitute state action); *Gayman v. Principal Financial Services, Inc.*, 311 F.3d 851.

■ In the present case, the conduct of which plaintiffs complain is defendants' conversion of MetLife from a mutual company to a stock company. The complaint, however, failed to allege facts that, if established, would show that MetLife's reorganization was conduct that was fairly attributable to the State. The reorganization was initiated by MetLife's board of directors. The Reorganization Plan was approved unanimously by the board, and it was approved overwhelmingly by the policyholders, all before there had been any regulatory approval by the Superintendent. And in granting approval, the Superintendent merely found that MetLife met the statutorily mandated standards for such a reorganization and allowed the process to go forward as planned. There is no basis in the complaint's factual allegations for inferring that the State ordered MetLife to convert to a stock company, or that it employed any sort of coercion to control MetLife or induce MetLife to reorganize, or that it became entwined in MetLife's management. Nor did MetLife's amendment of its Plan after the policyholders' vote carry any indicia of state action. Although the amendment could not become effective without a finding by the Superintendent that the proposed changes would not disadvantage policyholders, those changes were not suggested, encouraged, or required by the Superintendent. Rather, the modifications were initiated by Met-

Life's board of directors, which was empowered to do so by the terms of the Plan itself, the Plan having been approved by the policyholders. The Superintendent's review to ensure that the changes met the minimum legal requirements of § 7312 before granting regulatory approval did not constitute such involvement in the reorganization decision that these private defendants could be considered state actors.

Plaintiffs contend that their complaint is sufficient to allege state action by analogy to *Yee v. City of Escondido,* 503 U.S. 519, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). We are unpersuaded. In *Yee,* the city had authorized a private entity to engage in conduct that required an unrelated property holder to allow the physical occupation of his land, and the Court stated that "[t]he Takings Clause requires compensation if the government authorizes a compelled physical invasion of property." *Id.* at 527, 112 S.Ct. 1522. The change in MetLife's corporate form, converting it from a mutual to a stock insurance company, is not akin to the physical invasion or occupation of property.

Because plaintiffs' claims fail for lack of a sufficient allegation of state action, we need not reach the other issues decided by the district court.

## CONCLUSION

We have considered all of plaintiffs' contentions on this appeal and have found them to be without merit. For the foregoing reasons, the judgment of the district court is affirmed.