Anne **CIACCIARELLA**, Plaintiff,

v.

Michael **BRONKO** and Donald J. Zehnder, Jr., Defendants.

No. 3:07cv1241 (MRK).

United States District Court, D. Connecticut.

May 13, 2009.

Kelly Anne Rommel, Norman A. Pattis, Law Offices of Norman A. Pattis, LLC, Bethany, CT, for Plaintiff.

James Newhall Tallberg, Kerry L. Keeney–Curtin, Karsten, Dorman & Tallberg LLC, West Hartford, CT, Christine Anne Robinson, Richard A. O'Connor, Sachner & O'Connor, Middlebury, CT, for Defendants.

### MEMORANDUM OF DECISION

MARK R. KRAVITZ, District Judge.

Pending before the Court are Defendant Donald J. Zehnder, Jr.'s Motion for Summary Judgment [doc. # 63] and Defendant Michael Bronko's Motion for Summary Judgment [doc. # 64]. During oral argument on the motions for summary judgment, it became apparent that the Plaintiff, Anne Ciacciarella, had mistakenly made several admissions in her Local Rule 56(a)(2) statement that would be fatal to her claim if she were not allowed to amend it. With the Court's permission, Ms. Ciacciarella filed a Motion to Amend [doc. # 74], arguing that she should be allowed to amend her Local Rule 56(a)(2) state-

ment because it would be a miscarriage of justice to deny her an opportunity to litigate her claims because of a mistake of counsel and because Defendants would suffer no prejudice as a result. The Court agrees and grants Ms. Ciacciarella's Motion to Amend [doc. # 74]. As a result, the Court concludes that there are disputed issues of fact that must be decided by a jury and denies Defendant Zehnder's Motion for Summary Judgment [doc. # 63] and Defendant Bronko's Motion for Summary Judgment [doc. # 64].

### I.

Ms. Ciacciarella brings her claim under the First Amendment of the U.S. Constitution, alleging that she was fired from her position as a paralegal in Defendant Donald Zehnder's law office at the direction of Defendant Michael Bronko, then-Mayor of the Borough of Naugatuck, because of her political affiliation.[1] Ms. Ciacciarella was hired by Mr. Zehnder in May 2007, shortly after Mayor Bronko was elected as the Republican mayor of Naugatuck.[2] Ms. Ciacciarella had previously worked as the campaign coordinator for Curt Bosco, the Democratic candidate for mayor who lost to Mayor Bronko in the mayoral election several weeks before her hire. Ms. Ciacciarella began her employment in Mr. Zehnder's office the same day Mayor Bronko was inaugurated.

Mr. Zehnder had acted as town counsel for the Borough of Naugatuck since 2002. Three days after hiring Ms. Ciacciarella, Mr. Zehnder had a meeting with the newly-elected mayor, Mayor Bronko, to discuss Mr. Zehnder's continued appointment as town counsel. The result of the meeting was that Mr. Zehnder would remain

---

1. Ms. Ciacciarella also brings a number of state law claims, which the Court will address after addressing the federal claim.

2. Recently, Mayor Bronko lost his bid for reelection, but since he was Mayor at all relevant times in this case, the Court continues to refer to him as Mayor Bronko.

town counsel. The day after the meeting with Mayor Bronko, Mr. Zehnder terminated Ms. Ciacciarella's employment.

Ms. Ciacciarella alleges that Mayor Bronko made Mr. Zehnder's continued appointment as town counsel contingent upon him firing her and that he did so in retaliation for her work on Curt Bosco's campaign and because of her involvement in the Naugatuck Democratic party. Mr. Zehnder argues that he had already decided to fire Ms. Ciacciarella before his meeting with Mayor Bronko because of negative comments others had made about her and that Mayor Bronko did not make firing her a condition of his continued appointment as town counsel. Likewise, Mayor Bronko denies placing a condition on Mr. Zehnder's appointment as town counsel and claims that he did not care whether Ms. Ciacciarella worked for Mr. Zehnder or not. This factual dispute notwithstanding, Defendants still insist that they are entitled to summary judgment, both because of the admissions in Ms. Ciacciarella's Local Rule 56(a)(2) statement and because they believe Ms. Ciacciarella's claim fails as a matter of law.

## II.

The Court must first decide whether to allow Ms. Ciacciarella to withdraw several admissions in her Local Rule 56(a)(2) statement that seem to concede that Mayor Bronko played no role in Mr. Zehnder's decision to fire Ms. Ciacciarella. As Ms. Ciacciarella concedes, if she is not allowed to withdraw these admissions, then her First Amendment claim must fail because state action is an essential element of any § 1983 claim.

In her Local Rule 56(a)(2) statement, Ms. Ciacciarella admitted the following statements:

17. Based on the information he heard from his secretary and the negative comments he heard from the townspeople at Mayor Bronko's inauguration regarding the Ms. Ciacciarella, Attorney Zehnder decided that he would terminate the Ms. Ciacciarella's employment.

24. Attorney Zehnder informed Mayor Bronko that he had hired the Ms. Ciacciarella, but he told the Mayor that he had some issues with her and would be letting her go.

26. Attorney Zehnder had already decided to terminate the Ms. Ciacciarella before the meeting with the mayor.

Def.'s 56(a)(1) Statement [doc. # 64-2], as admitted in Pl.'s 56(a)(2) Statement [doc. # 65-2] (citations omitted). Ms. Ciacciarella wishes to amend her responses as follows:

17. Deny. Attorney Zehnder terminated the Ms. Ciacciarella's employment because this was a stipulation by the mayor for him to remain borough attorney. He had to fire her after the meeting with the mayor in which he was informed that he would be the new borough attorney.

24. Deny in part. The mayor was the first person to raise the Ms. Ciacciarella's name. The mayor had an issue with the Ms. Ciacciarella as he said "something to the effect that the thought Anne..had been behind a lot of negativism of the campaign."

26. Deny. Attorney Zehnder terminated the Ms. Ciacciarella's employment because this was a stipulation by the mayor for him to remain as borough attorney. He had to fire her after the meeting with the mayor in which he was informed that he would be the new borough attorney.

Pl.'s Motion to Amend [doc. # 74] at 2–3 (citations omitted).

▮ In general, "[a] party's assertion of fact in a pleading is a judicial admission

by which [the party] normally is bound throughout the course of the proceeding." *Pacheco v. Serendensky,* 393 F.3d 348, 354 (2d Cir.2004) (quotation marks omitted). However, courts have "broad discretion to relieve the parties from the consequences of judicial admissions in the appropriate circumstances." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.,* 379 F.Supp.2d 348, 371 (S.D.N.Y.2005); *see also Campoli v. Chubb Group of Ins. Cos.,* No. 3:04CV1004 (MRK), 2006 WL 57391, at *3–4, 2006 U.S. Dist. LEXIS 1564, at *10 (D.Conn. Jan. 9, 2006). In particular, "where a party claims that its admission is the result of fraud or mistake, the admission may not necessarily be binding." *Dortz v. City of New York,* 904 F.Supp. 127, 146 n. 6 (S.D.N.Y.1995) (citing *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 122 (2d Cir.1990)).

■ Ms. Ciacciarella's counsel has averred that he misunderstood the statements and believed that he was admitting to what Mr. Zehnder testified to, not to the truth of the matter asserted. *See* Motion to Amend [doc. # 74] Ex. 1, ¶¶ 8–9 (Affidavit of Norman Pattis). Defendants argue that Ms. Ciacciarella has not shown that the admissions were a mistake, instead implying that she made the admissions in an unguarded moment of candor which she now regrets. However, the Court is persuaded that the admissions were most likely the result of a mistake by Ms. Ciacciarella's counsel and there is no reason to punish Ms. Ciacciarella for her counsel's errors, especially when there is no prejudice to Defendants.

The Court is persuaded that the admissions were made by mistake for several reasons. For one thing, the admissions are diametrically opposed to every other pleading filed by Ms. Ciacciarella and they are inconsistent with Ms. Ciacciarella's fundamental theory of the case. In her Complaint, for instance, Ms. Ciacciarella alleges that "defendant Bronko told defendant Zehnder that the town would not offer him the town counsel's position unless he immediately fired the Ms. Ciacciarella." Compl. [doc. # 1] ¶ 17. Likewise, in her Memorandum in Opposition to Summary Judgment [doc. # 65]—which was filed at the same time as the Local Rule 56(a)(2) statement—Ms. Ciacciarella states that her "theory is that the mayor told Mr. Zehnder that a condition precedent to appointment as town counsel was the firing of Ms. Ciacciarella. This pressure translates easily into private action that can constitute state action." *Id.* at 9. These statements directly contradict the admissions in Ms. Ciacciarella's Local Rule 56(a)(2) statement. The most reasonable explanation for these contradictions is that Ms. Ciacciarella's counsel erred in making the admissions.

Furthermore, the Court finds Ms. Ciacciarella's counsel's explanation of the mistake to be plausible. The statements cite Mr. Zehnder's deposition for support and could be construed as describing Mr. Zehnder's testimony rather than seeking admissions of the underlying facts. This kind of ambiguity is common in Local Rule 56 statements and often leads to complicated responses in which parties "admit in part" or "admit that is what the testimony states." Although this type of response is less helpful for the Court, it does have the benefit of preventing precisely the type of confusion that occurred here. Thus, the Court credits Ms. Ciacciarella's assertion that the admissions were mistakenly made by her counsel and do not accurately represent her position. Moreover, it is clear that the mistake was made by Ms. Ciacciarella's counsel and not Ms. Ciacciarella herself. Ms. Ciacciarella's deposition testimony is consistent with her Complaint and the Memorandum in Opposition to Sum-

mary Judgment and is inconsistent with the Local Rule 56(a)(2) statement. *See* Def.'s Motion for Summary Judgment [doc. # 64] Ex. B (Ciacciarella Deposition).

Defendants argue that they would be prejudiced by allowing Ms. Ciacciarella to withdraw the admissions at this point. The Court is unpersuaded. Defendants were on notice of Ms. Ciacciarella's claims and her theory of the case long before the filing of the Local Rule 56(a)(2) statement. As the Court has indicated, Ms. Ciacciarella's deposition testimony was consistent with her theory of the case and inconsistent with her Local Rule 56(a)(2) statements. Mr. Zehnder did not file a reply brief and Mayor Bronko devoted only two paragraphs to the admission in his reply brief, focusing instead on the other legal issues in the case. Indeed, Defendants admitted at oral argument that they were surprised by Ms. Ciacciarella's admissions. Thus, this is not a case in which Defendants were denied the opportunity to conduct relevant discovery or were required to extensively brief an issue that became moot.

It is true that Ms. Ciacciarella waited until oral argument to request permission to amend her Local Rule 56(a)(2) statement, more than two and a half months after Ms. Ciacciarella was alerted to the error in Mayor Bronko's reply brief. Although certainly not an exemplar of good lawyering, nothing occurred in the intervening time period that prejudiced Defendants. Ms. Ciacciarella did not file any additional papers that confirmed the admissions, nor were Defendants required to devote any additional attention to the issue beyond the two paragraphs in Mayor Bronko's reply brief. The Court also notes that Ms. Rommel, the attorney who argued on behalf of Ms. Ciacciarella at oral argument, filed her notice of appearance in the case less than a week before oral argu-

ment. Although the Court does not know why Ms. Ciacciarella did not seek to withdraw the admissions earlier, it may be that a switch-over in lead counsel contributed to the delay.

Given the fact that Defendants will suffer no prejudice, the Court is loathe to dismiss Ms. Ciacciarella's claim because of a mistake made by her counsel. The Court's first priority at all times is to ensure that justice is served, *see* Fed. R. Civ. Pro. 1, and the Court believes that justice will be best served in this case by allowing Ms. Ciacciarella to withdraw the admissions. Therefore, the Court grants Ms. Ciacciarella's Motion to Amend [doc. # 74].

### III.

■ Mayor Bronko argues that even if Ms. Ciacciarella is allowed to amend her Local Rule 56(a)(2) statement, she has not presented any admissible evidence that he made Mr. Zehnder's continued appointment as town counsel contingent on firing Ms. Ciacciarella. Without such evidence, he argues, she cannot show state action and her claim must fail as a matter of law. Mr. Zehnder does not make this argument, and for good reason. Ms. Ciacciarella has submitted the depositions of two probate clerks who overheard Mr. Zehnder tell a friend that the mayor had ordered him to fire Ms. Ciacciarella if he wanted to continue as town counsel and that Mr. Zehnder had agreed to do so. Mr. Zehnder's statements are admissible against him because they constitute party admissions under Rule 801(d)(2)(A) of the *Federal Rules of Evidence*. *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 239 (2d Cir.1999).

Mayor Bronko argues, however, that the probate clerks' testimony is not admissible against *him* because it does not fall within any of the exceptions to the hearsay rule. Ms. Ciacciarella responds that the testimo-

ny is admissible against Mayor Bronko under the co-conspirator exception, the excited utterance exception, the agent exception, and the residual hearsay exception. Mayor Bronko does not seem to dispute that if Ms. Ciacciarella's version of events is true, a reasonable jury could decide that she has satisfied the state action requirement. *See Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir.2003) (holding that state action is present when "the state exercises 'coercive power' over, is 'entwined in the management or control' of, or provides 'significant encouragement, either overt or covert' to, a private actor") (quoting *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)).

■ The Court need not decide whether the probate clerks' testimony is admissible against Mayor Bronko at this point because, even if the Court does not consider the probate clerks' testimony against Mayor Bronko, there is evidence that there may have been an understanding between the Mayor and Mr. Zehnder that he was required to fire Ms. Ciacciarella in order to continue as town counsel.[3] For example, Mr. Zehnder admitted that he was worried that Mayor Bronko would not continue his appointment as town counsel because he had hired Ms. Ciacciarella. Mr. Zehnder also testified that Mayor Bronko was the one to raise Ms. Ciacciarella's name in the meeting. Mr. Zehnder's response to Mayor Bronko's inquiry was to state that he planned to fire her so "it shouldn't be an issue." Pl.'s Mem. in Opp'n to Summ. J [doc. # 65] Ex. C at 86. One might wonder why Mayor Bronko brought up Ms. Ciacciarella's name at all if he did not care whether she worked for Mr. Zehnder or not. And Mr. Zehnder's statement that "it shouldn't be an issue" implies that it might have been an issue if he had not been planning to fire her. At the very least, a jury could conclude that Mr. Zehnder perceived Ms. Ciacciarella's employment to be an issue for Mayor Bronko.

Mayor Bronko's testimony could also be read in several different ways. When asked in his deposition when he found out that Mr. Zehnder had fired Mr. Ciacciarella, Mayor Bronko stated he did not remember because "I just was going by his word that he was going to dismiss her, so I wasn't concerned with when he was going to do it." Def.'s Mot. for Summ. J. [doc. # 64] Ex. A at 22–23. Being concerned about *when* Mr. Zehnder was going to fire Ms. Ciacciarella is different than not caring whether he fired her at all. And giving one's "word" generally implies a promise to do something, although Mayor Bronko denies that such a promise was made. State action does not require that a quid pro quo arrangement be spelled out in so many words. As *Tancredi* makes clear, even covert encouragement by a state official may qualify as state action. *See Tancredi*, 316 F.3d at 312. A jury could conclude that an implicit quid pro quo existed between Defendants. Therefore, the Court denies summary judgment on the state action element of Ms. Ciacciarella's First Amendment claim.

If at the time of trial, Ms. Ciacciarella plans to call the probate clerks as witnesses or use Mr. Zehnder's deposition

---

**3.** The Court also notes that Mr. Zehnder confirmed the probate clerks' testimony in his deposition, although he claimed that he misspoke and gave a different version of what occurred at the meeting. *See* Def.'s Mot. for Summ. J. [doc. # 64] Ex. C at 90–92 (Zehnder Deposition). The Court reserves decision on whether Mr. Zehnder's deposition testimony about what he said in the Probate Office is admissible against Mayor Bronko or, at a minimum, admissible to prove Mr. Zehnder's state of mind at the time.

testimony against Mayor Bronko, the Court will decide whether the evidence is admissible to show Mr. Zehnder's state of mind at the time he fired Ms. Ciacciarella or whether any of the hearsay exceptions applies to Mr. Zehnder's statements, and, if none applies, the Court will entertain requests for an appropriate limiting instruction to the jury.

## IV.

Defendants make several other arguments for why summary judgment should be granted on Ms. Ciacciarella's First Amendment claim. First, Defendants argue that Ms. Ciacciarella is not a public employee protected by the First Amendment. Second, Defendants argue that even if she is considered a public employee, she is a confidential employee who can be fired because of her political affiliation. The Court will consider each of these arguments.

### A.

The Supreme Court has held that public employees cannot be fired for their political affiliation unless they hold a policymaking or confidential position. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The Court has extended this protection to independent contractors. *See O'Hare v. City of Northlake,* 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996); *Bd. of Cty. Comm'rs v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2361, 135 L.Ed.2d 843 (1996). Defendants argue that Ms. Ciacciarella should not be considered a public employee because she did not have a long-standing employment relationship with Mr. Zehnder, only working for him for three days before she was fired. They point out that in *O'Hare* and *Umbehr,* the independent contractors had well-established contractual relationships with the municipalities in question. They also point out that while the Supreme Court declined to decide whether bidders or applicants for government contracts are protected, *see Umbehr,* 518 U.S. at 685, 116 S.Ct. 2342, at least one court of appeals has concluded that they are not, *see McClintock v. Eichelberger,* 169 F.3d 812, 816 (3d Cir.1999). The Second Circuit has not decided the issue. *See African Trade & Information Center v. Abromaitis,* 294 F.3d 355, 361 (2d Cir.2002) (declining to decide whether applicants or bidders for government contracts had First Amendment right).

If Ms. Ciacciarella had been an applicant for a position in Mr. Zehnder's office, then Mayor Bronko probably would have enjoyed qualified immunity on this issue. *See id.* at 362 (granting qualified immunity on claim by independent contractor applicant because right was not clearly established). However, Ms. Ciacciarella was not an applicant; she was a current employee of Mr. Zehnder's. Nor was Mr. Zehnder an applicant or bidder for a government contract; he had served as town counsel since 2002 and his meeting with Mayor Bronko concerned only whether he would be permitted to continue on as town counsel. Defendants try to make a distinction between longstanding and recently-hired employees of independent contractors, but that is not the distinction drawn by the Supreme Court in *Umbehr* and *O'Hare,* nor does the Court believe that such a distinction makes any sense in this context. How long would be sufficient to establish a "longstanding" employment relationship? Two months? A year? Ten years? Luckily, the Court need not intuit a point at which the interest in one's employment becomes substantial enough to merit First Amendment protection because a bright-line rule already exists—the line between employee and applicant. Ms.

Ciacciarella falls on the employee side of that line.

Defendants also argue that because Ms. Ciacciarella was not a party to the contractual agreement between Mr. Zehnder and the Borough of Naugatuck, she cannot claim the protection of the First Amendment. But if this were the case, an official could order an independent contractor to fire every single one of his employees so long as the official did not fire the independent contractor himself. The Court cannot conceive of—nor could Defendants supply—a rational legal principle that would allow it to arrive at such a bizarre result. Nor does such a result comport with the Supreme Court's reasoning in *O'Hare* and *Umbehr* for extending First Amendment protections to independent contractors. It was the coercive potential, not the formal relationship, that lay at the heart of the Supreme Court's decisions in *O'Hare* and *Umbehr* and the coercive potential is just as great when an official orders an employee of an independent contract to be fired as when the official fires the independent contractor directly. Thus, the Court concludes that Ms. Ciacciarella should receive the same First Amendment protection as a public employee.

### B.

■ Defendants' other argument is that Ms. Ciacciarella was a confidential employee and, therefore, does not enjoy the protection of the First Amendment regardless of her status as a public employee. *See Elrod,* 427 U.S. at 372, 96 S.Ct. 2673; *Branti,* 445 U.S. at 517, 100 S.Ct. 1287 (1980). In determining whether an individual is protected under the *Elrod/Branti* doctrine, "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 517, 100 S.Ct. 1287; *see also Savage v. Gorski,* 850 F.2d 64, 68 (2d Cir.1988) ("[P]olitical affiliation is an appropriate requirement when there is a rational connection between shared ideology and job performance."). In *Savage,* the Second Circuit held that the personal secretary of the mayor was a confidential employee because her position involved "confidentiality, discretion in disseminating information to the public, and independent judgment regarding department policies and procedures." *Id.* at 69. Thus, the relevant question is whether Ms. Ciacciarella's position can be described similarly.

Two of the three factors are clearly not relevant to this case. Ms. Ciacciarella was not charged with disseminating information to the public or making independent judgments regarding municipal policies. On the other hand, "confidentiality" is relevant here. It is quite possible that Ms. Ciacciarella had access to confidential information in Mr. Zehnder's municipal files, and the Court is sympathetic to Mayor Bronko's concern that he did not want such confidential information to fall into the hands of his political opponents, including Ms. Ciacciarella's former boss. If Ms. Ciacciarella's position required her to have access to municipal files or if she was given access to them regardless of whether her position required it, then Ms. Ciacciarella would be a confidential employee and would not be protected from patronage firings.

However, there appears to be a disputed issue of fact as to whether Ms. Ciacciarella had access to confidential information. Ms. Ciacciarella alleges that she was hired to work on Mr. Zehnder's personal injury cases and had nothing to do with his work as town counsel. Mr. Zehnder argues that his law office was so small that she could

not help but become privy to confidential information. Unfortunately, neither Defendant has put any evidence into the record establishing that Ms. Ciacciarella did or would have access to confidential information. Mr. Zehnder did testify that his secretary told him that she caught Ms. Ciacciarella looking at municipal files, but this is hearsay unless the secretary herself testifies to that fact, and she has not done so at this stage. And in any event, Ms. Ciacciarella denies the allegation, creating an issue of material fact.

Therefore, in addition to the question of whether Ms. Ciacciarella was fired because of her political affiliation and whether there was state action, the jury will also need to decide whether Ms. Ciacciarella had access to confidential information in Mr. Zehnder's law office. The Court therefore denies summary judgment on this claim.[4]

## V.

 Ms. Ciacciarella also asserts claims for tortious interference with contractual obligations against Mayor Bronko and for breach of contract, detrimental reliance, and defamation, as well as a claim pursuant to Conn. Gen.Stat. § 31–51q against Mr. Zehnder. Defendants' only argument with respect to Ms. Ciacciarella's state law claims is that the Court should decline to exercise supplemental jurisdiction, an argument that is contingent on the Court granting summary judgment on Ms. Ciacciarella's federal claim. Having concluded that Ms. Ciacciarella's First Amendment claim must proceed to trial, it is appropriate for the Court to continue to exercise supplemental jurisdiction over Ms. Ciacciarella's state law claims, which arise out of the same events as her federal claim. Therefore, summary judgment is denied with respect to Ms. Ciacciarella's state law claims.

## VI.

For the foregoing reasons, Defendant Zehnder's Motion for Summary Judgment [doc. # 63] and Defendant Bronko's Motion for Summary Judgment [doc. # 64] are DENIED. Ms. Ciacciarella's Motion to Amend [doc. # 74] is GRANTED and Ms. Ciacciarella is directed to file her amended Local Rule 56(a)(2) statement on the record. The Court will issue a separate trial scheduling order.

IT IS SO ORDERED.

---

4. Mayor Bronko also argues that he should prevail under the *Pickering* balancing test because the governmental interest in having loyal employees outweighs Ms. Ciacciarella's interest in her job. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). However, *Pickering* does not apply when it is "the raw test of political affiliation," rather "specific instances of the employee's speech or expression" that is at issue. *See O'Hare*, 518 U.S. at 719, 116 S.Ct. 2353. Ms. Ciacciarella does not argue that she was fired because of something specific she said, nor do Defendants claim that to be the case.