Nalini SRINIVAS, Plaintiff,

v.

**John PICARD, Deborah Skerritt, Lynn Jacqua, Edward Flynn, Cheryl Corbally, Tracey Morrissey, Robert Sandella, James Burns, Pat Howard, and James McMahon, II, Defendants.**

Civil No. 3:08–CV–01534 (AWT).

United States District Court,
D. Connecticut.

Aug. 26, 2009.

■■■■■■■■

Anthony J. Pantuso, III, Pantuso Law Firm LLC, Milford, CT, for Plaintiff.

Karen Baldwin Kravetz, Meghan K. Gallagher, Thomas E. Katon, Susman, Duffy & Segaloff, New Haven, CT, Michael J. Rose, Rose Kallor, LLP, Hartford, CT, Charles A. Deluca, Clarisse Nicole Thomas, Michael T. Ryan, Ryan Ryan Deluca, LLP, Stamford, CT, for Defendants.

## RULING ON MOTIONS TO DISMISS

ALVIN W. THOMPSON, District Judge.

Plaintiff Nalini Srinivas ("Srinivas") brought this action against defendants John Picard ("Picard"), Deborah Skerritt ("Skerritt"), Lynn Jacqua ("Jacqua"), Edward Flynn ("Flynn"), Cheryl Corbally ("Corbally"), Tracey Morrissey ("Tracey Morrissey"), Robert Sandella ("Sandella"), James Burns ("Burns"), Pat Howard ("Howard"), and James "Hooker" McMahon, II ("McMahon"), setting forth three claims: (i) a claim pursuant to 42 U.S.C. § 1983 for denial of substantive due process; (ii) a claim pursuant to 42 U.S.C. § 1983 for deprivation of liberty; and (iii) a claim pursuant 42 U.S.C. § 1985. Picard has moved to dismiss all claims pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The remaining defendants have moved to dismiss all claims pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, all claims against defendants Picard, Corbally, Tracey Morrissey, Sandella, Burns, McMahon, Flynn, and Howard are being dismissed. In addition, Counts II and III of the Amended Complaint are also being dismissed as to defendants Skerritt and Jacqua.

## I. FACTUAL ALLEGATIONS

For purposes of this motion, the court takes the factual allegations set forth in the Amended Complaint as true.

At the time of the events in question, the parties all had some connection with the City of West Haven (the "City"). Srinivas was the Finance Director. Picard was the Mayor. Skerritt was an official of Local 681 of the American Federation of State, County, and Municipal Employees and a City employee whose duties included processing payroll for all City employees. Jacqua was President of Local 681 and a City employee. Flynn and Howard were City employees in the Tax Office whose duties included tallying the amount of money in the cashiers' drawers at the end of each day. Corbally was a City employee whose duties included auditing all accounts payable and payments received. Tracey Morrissey was a member of the City Council. Sandella was a City employee. Burns was a City employee who was assigned by the Mayor to investigate allegations that Srinivas assaulted Yvette Cintron ("Cintron"), who was also a City employee. McMahon was a principal in the firm Income, Inc., which was a vendor that sold insurance to the City. James Morrissey, who is not a defendant, was the Chairman of the City's Democratic Party.

On or about March 1, 2006, Srinivas was hired as the Finance Director for the City. Upon taking the position, she began to implement new policies directed at improving the City's finances. These included, but were not limited to, a purchase order system to prevent employees from spending money without authorization; a system of access-control and user authorization to limit the ability of employees to spend money without proper authorization; a new payroll system to eliminate the ability to create phantom employees; and the requirement that all cashiers in the Tax Col-

lector's office balance their cash drawers on a daily basis, to prevent fraud and theft.

Srinivas implemented the new payroll system, the "MUNIS" system, in the summer of 2006. This was done after Wachovia Bank informed her it been unable to process one of Skerritt's direct deposits because it could not verify the employee number on the paycheck. Skerritt was responsible for assigning employee numbers to all City officials, and Srinivas alleges that the only way Skerritt could have obtained a new employee number was to manually assign one to herself. This led Srinivas to not only create the new payroll system but to also restrict Skerritt's access so that she could no longer authorize payments on behalf of the City.

Srinivas alleges that, on or about September 28, 2006, Skerritt threatened to use the political power of her brother-in-law, James Morrissey, against Srinivas's supervisor, Alan Olenick, unless Olenick reinstated Skerritt's access to the payroll system. James Morrissey allegedly spoke to Picard about the situation. Mayor Picard and Olenick reinstated Skerritt's full access to the MUNIS system. Srinivas alleges that Corbally was implicated in Skerritt's activities because she was in a position to audit Skerritt's payments and did not report unauthorized payments. She alleges that Corbally and Skerritt deleted several years' worth of payroll records to destroy evidence of previously created phantom employees.

Srinivas also implemented a new policy that required cashiers in the Tax Office to reconcile their cash drawers at the end of each day. The previous policy was to have Howard and Flynn take the drawers into Howard's office, count the cash, and then inform the cashiers how much was in each drawer. Both Howard and Flynn told their employees to ignore the new policy, and when Flynn found out that a cashier had been keeping a daily tally, he gave it to Howard, who threw it away and threatened not to approve the cashier's request for vacation time if she continued to comply with Srinivas's directive. Both Skerritt and Flynn then went to Jacqua, President of Local 681, and filed complaints that Srinivas was trying to change the cashiers' job descriptions in violation of the collective bargaining agreement.

Srinivas raised the ire of McMahon when she recommended that the City change insurance agencies from his agency to another one, which would cost McMahon between $2 and $3 million in commissions. McMahon complained to Mayor Picard, who eventually directed a percentage of the commission on the City's new insurance policy to McMahon, even though his agency was not the agent of record. McMahon also complained to James Morrissey, the Chairman of the City's Democratic Party, who told Srinivas to "watch her step." (Am. Compl. at ¶ 60.)

The plaintiff contends that all of the defendants took part in forcing her removal from office. Jacqua and Skerritt organized a campaign to get unionized employees to complain about her, while Flynn filed multiple "baseless" complaints against her. (Am. Compl. at ¶ 65). As part of Jacqua and Skerritt's plan, Cintron made a written complaint to Local 681 on July 27, 2006 that Srinivas had assaulted her. The alleged assault was reported to the West Haven Police Department, which determined on or about October 1, 2006 that there had been no assault. Tracey Morrissey and Sandella met on numerous occasions to conspire against Srinivas, and Tracey Morrissey also made baseless complaints against Srinivas to Mayor Picard. Sandella told Tracey Morrissey that he "finally" had found something to get Srinivas fired and pressured Picard to fire the plaintiff. (Am. Compl. at ¶ 72.)

Picard placed Burns in charge of an investigation into Srinivas's conduct. The investigation led to her suspension, of which she was notified by means of a letter delivered by a state marshal on December 11, 2006, and the institution of termination proceedings against her on March 16, 2007 pursuant to Chapter III, Section 4(a) of the City Charter. As provided by the Charter, the hearing was closed to the public and presided over by Attorney Gerald H. Cooper, an "independent third party agreed to by both the Plaintiff and the City." (Mem. Supp. Picard's Mot. Dismiss ("Picard's Mem.") at 3 (Doc. No. 55).) Srinivas alleges that during these proceedings, Picard, Burns, Sandella, and McMahon gave false testimony in order to justify her termination. On March 4, 2008 Attorney Cooper issued a written decision finding that Picard had cause to terminate the plaintiff's employment.

## II. LEGAL STANDARD

A claim is properly dismissed for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim. *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182 (2d Cir.1996). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir.2005). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000).

The standards for dismissal under Fed. R.Civ.P. 12(b)(1) and 12(b)(6) are identical. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir.2003). When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds of his entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) *citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, the courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact.)" *Id.* (citations omitted). However, the plaintiff is required to plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.*, 34 F.Supp.2d 130, 131 (D.Conn.1999) *quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727

F.Supp. 784, 786 (D.Conn.1990) *citing Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683.

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

## III. DISCUSSION

### A. Count I: § 1983 Substantive Due Process

■ "It is well established that in order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Eagleston v. Guido,* 41 F.3d 865, 875–876 (2d Cir.1994). "Substantive due process protects individuals against government action that is arbitrary, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (internal citations and quotation marks omitted). "For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy,* 401 F.3d 75, 93 (2d Cir.2005), *quoting County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

#### 1. Under Color of Law

■ The plaintiff has sufficiently alleged that at all relevant times, all of the defendants except McMahon were acting as City officials or employees. Thus the defendants, other than McMahon, were acting under the color of state law for that reason. *See Velez,* 401 F.3d at 84. McMahon, however, was merely a vendor of insurance to the City. "In order to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be 'fairly attributable' to the state." *Tancredi v. Metropolitan Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir.2003), *quoting American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). There must be "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001), *quoting Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Srinivas alleges only that McMahon complained to Mayor Picard and to James Morrissey, Chairman of the City's Democratic Party, about Srinivas's proposed change in insurance agencies and that McMahon "gave false and/or misleading testimony" at her termination hearing. (Am. Compl. at ¶ 80.) Neither allegation sufficiently links McMahon's action to the City so that it could be said he operated "as a willful participant in joint activity with the [City] or its agents...." *Tancredi,* 316 F.3d at 313, *quoting Brentwood Academy,* 531 U.S. at 296, 121 S.Ct. 924. Therefore, Count I should be dismissed as to McMahon.

#### 2. Property Interest

■ "To establish a violation of [substantive due process], plaintiff must initially show that she was deprived of a property ... interest." *Gordon v. Nicoletti,* 84 F.Supp.2d 304, 308–309 (D.Conn.2000). The plaintiff alleges that she was deprived of "due process of law under the law as

guaranteed by the Fourteenth amendment." (Am. Compl. at ¶ 82.) Further, she describes this right as the right "to pursue her livelihood." (Mem. Supp. Pl.'s Opp'n. to Picard's Mot. Dismiss (Doc. No. 63) ("Opp'n Picard's Mem.") at 8).[1] The relief sought by the plaintiff includes reinstatement to the position of Finance Director.

Picard contends that the defendant does not have a property interest because she was a term employee whose job expired at the end of the mayor's term, i.e. during the hearing process, and because she was not entitled to be reappointed she cannot establish an injury. The record is silent as to whether Srinivas was suspended without pay, but she seeks back-pay, front-pay, lost benefits, and lost pension benefits.

Chapter II, Section 2 of the City Charter states that "[a] General Municipal Election shall be held on the First Tuesday after the First Monday of November ... and biennially thereafter for the purpose of electing ... a Mayor.... [The Mayor's term] shall commence on the First Sunday of December following election and shall run for a period of two years...." (Ex. A. at C4 (Doc. No. 55) (at Attachment 1).) Chapter X, Section 1 further states that "The Mayor shall appoint a Director of Finance, whose term shall run concurrently with that of the Mayor." (*Id.* at C19.) While neither party directly states when Picard was elected to the term in question, Picard states that he appointed Srinivas to the position of Finance Director on or about March 1, 2006, "[a]fter being elected to his first term in office as Mayor...." (Picard's Mem. at 2).

■ Thus it appears that Picard was elected in November of 2005 and took office at the beginning of December, 2005

with a term that would last until the first Sunday in December, 2007. Therefore, Srinivas's term as Finance Director officially ended with the end of the Mayor's first term, on the first Sunday in December, 2007. Srinivas was notified of her suspension on December 11, 2006 and the ruling that there was cause to terminate her employment was issued on March 4, 2008.

■ The Supreme Court has held that a public servant can have a valid property interest in his or her employment. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Id.* at 577, 92 S.Ct. 2701. "Thus, only where a plaintiff can demonstrate that state law confers 'a legitimate claim of entitlement' to a particular position will a property interest in that position arise." *Velez,* 401 F.3d at 85, *quoting Roth,* 408 U.S. at 577, 92 S.Ct. 2701.

Here, as in *Roth,* Srinivas had no guarantee of reappointment after her term expired. She "surely had an abstract concern in being rehired", *Roth,* 408 U.S. at 578, 92 S.Ct. 2701, but this alone supports "absolutely no possible claim of entitlement to re-employment." *Id.* Therefore, while the plaintiff does have a property interest in her position with respect to the period of time between her suspension and the end of the term of appointment, i.e. the end of the Mayor's first term in December of 2007, she does not have a property

---

1. The Court notes that while the plaintiff did not specifically allege that she had a property interest in the Amended Complaint, she did allege that she had one in Count Four, the

RICO count, in her initial complaint dated September 29, 2008. (*See* Compl. (Doc. No. 1) at 97.)

interest in that position with respect to any period after that point in time.

### 3. Conduct that is "Conscience–Shocking"

"For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may be said to shock the contemporary conscience.'" *Velez,* 401 F.3d at 93, *quoting Sacramento,* 523 U.S. at 847 n. 8, 118 S.Ct. 1708. While many such claims involve the use of excessive force, they can arise in other areas of governmental action as well. *See, e.g., Natale v. Town of Ridgefield,* 170 F.3d 258, 262–264 (2d Cir. 1999) (discussing the "shock the conscience" test in an administrative action case). "[T]he measure of what is conscience-shocking is no calibrated yard stick.... [M]alicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." *Johnson v. Newburgh Enlarged School Dist.,* 239 F.3d 246, 252 (2d Cir.2001)(internal citation omitted). Government action might be so arbitrary that it violates substantive due process, "regardless of the fairness of the procedures used." *Lowrance,* 20 F.3d at 537 (citation omitted). However, substantive due process does not protect against government action that is merely "incorrect or ill-advised." *Id. quoting Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). "[W]hether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken." *O'Connor v. Pierson,* 426 F.3d 187, 203 (2d Cir.2005) The "intentional[ ] and malicious[ ] fabricat[ion] and disseminat[ion][of] falsehoods in a common effort to deprive the plaintiff of her job .... might well be sufficiently 'arbitrary' and 'outrageous,' in a constitutional sense, to make out a valid substantive due process claim." *Velez,* 401 F.3d at 94, *citing Natale,* 170 F.3d at 262.

Srinivas does not allege conduct sufficient to satisfy the requirements for being "conscience-shocking" with respect to defendants Picard, Corbally, Tracey Morrissey, Sandella, Burns, Flynn, and Howard. "As the court held in [*Twombly* ], the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft,* 129 S.Ct. at 1949, *quoting Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (2007).

Srinivas alleges that Mayor Picard "succumbed to political pressure" and fired her, (Am. Compl. at ¶ 79), and, in substance, that he gave as a pretextual reason for his conduct that her employment was being terminated for cause pursuant to Chapter III, Section 4(a) of the City Charter. The Mayor notified the plaintiff of his decision and of her right to a hearing. This conduct does not rise to the level of "malicious and sadistic abuses of government power that [is] intended only to oppress or to cause injury and serve no legitimate government purpose [that] unquestionably shock[s] the conscience." *Johnson,* 239 F.3d at 252.

The plaintiff alleges that Corbally "had not been properly reconciling the payroll accounts," (Am. Compl. at ¶ 32), and that either Corbally "and/or" Skerritt deleted several years of payroll records to avoid the detection of financial improprieties. (Am. Compl. at ¶ 42.) There is no allegation implicating Corbally in a campaign to get Srinivas fired, much less allegations describing a reason for or method of carrying out the campaign that could satisfy requirements for being conscience-shocking. The plaintiff has failed to state a claim as to Corbally that is plausible on its face.

██ Srinivas alleges that defendants Jacqua and Tracey Morrissey opposed and vociferously campaigned against her policies. Jacqua allegedly opposed Srinivas's financial reforms, filed complaints against her for trying to change job descriptions in violation of the collective bargaining agreement, and encouraged others to file complaints against her. Similarly, the plaintiff alleges that complaints made by Tracey Morrissey to Picard were "baseless," and made "in an effort get Srinivas fired." (Am. Compl. at ¶ 70.) There are no facts alleged suggesting that Jacqua's statements in the complaints were intentional or malicious fabrications. *See Velez*, 401 F.3d at 94. As to Tracey Morrissey, while Srinivas claims that the complaints Tracey Morrissey made were "baseless," (Am. Compl. at ¶ 70), she does not specify the contents of any of the complaints or state to whom they were made, much less include factual allegations that could support a conclusion that they were intentional or malicious fabrications. Allegations that a defendant opposed workplace policies and encouraged others in the workplace to also oppose them are not sufficient to state a claim for a substantive due process violation.

██ Srinivas alleges that in the course of the investigation of the assault on Cintron, defendants "Skerritt, Sandella, Flynn, Howard, Corbally, Jacqua and Picard gave false and/or misleading statements about Srinivas, in an effort to justify her termination." (Am. Compl. at ¶ 78). As discussed above, intentionally and maliciously fabricating and disseminating falsehoods to get someone fired would violate substantive due process. *See Velez*, 401 F.3d at 94. However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, *quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

██ In addition, the plaintiff appears to take the position that mere allegations that a defendant made "false *and/or* misleading statements" is sufficient to plead a substantive due process claim. (Am. Compl. at ¶ 78) (emphasis added). They are not. While Srinivas cites *Johnson* in support of her argument that making false and/or misleading statements prior to and during an investigation "offend[s] our fundamental democratic notions of fair play, ordered liberty, and human decency," the conduct being referred to in *Johnson* was the use of excessive force. *See Johnson*, 239 F.3d at 252. Srinivas does not say what was "false and/or misleading" about Sandella's, Corbally's, and Picard's statements made in the course of the investigation, let alone provide any allegations that suggest that they were intentional or malicious fabrications. Based on the allegations in the Amended Complaint, the statements could have been simply misleading. This is not sufficient to raise a right to relief above the speculative level.

Similarly, the plaintiff alleges that, "[d]uring the course of the termination proceedings, Defendant's Picard, Burns, Sandella and McMahon gave false and/or misleading testimony in an effort to justify Srinivas' termination." (Am. Compl. at ¶ 80.) For the same reason, this is not sufficient to raise a right to relief above the speculative level.

Therefore, Count I should be dismissed as to Picard, Burns, Sandella, Tracey Morrissey, and Corbally.

██ Srinivas has sufficiently alleged a violation of her substantive due process rights by Skerritt and Jacqua. The plaintiff alleges that "on July 27, 2006, as part of the campaign organized by Defendant's Jacqua and Skerritt, Yvette Cintron ..., an employee in the City's Finance Department, made a written complaint to Local 681, alleging that Srinivas had assaulted

her six days earlier." (Am. Compl. at ¶ 67.) The assault was reported to the West Haven Police Department, which concluded that "there had been no criminal act by Srinivas." (Am. Compl. at ¶ 69). This is analogous to the situation in *Velez* in that the plaintiff has alleged conduct that would constitute a common effort to disseminate an intentional and malicious fabrication for the purpose of depriving the plaintiff of her job.

Therefore, the motion to dismiss Count I should be denied as to Skerritt and Jacqua.

▮ The conduct Srinivas alleges was engaged in by Howard and Flynn with respect to counting cash in the Tax Collector's office was not directed towards the plaintiff and ultimately had no bearing on the termination of her employment. Howard and Flynn were counting the contents of the cash drawers at the end of the day in Howard's office, and the plaintiff implemented a new policy that required every teller to count the cash in his/her own drawer instead. Both individuals told the cashiers to ignore the policy, and when Flynn found a tally sheet in one of the drawers, he presented it to Howard, who threatened to deny the cashier's vacation time if she continued to comply with Srinivas directives. Even if these allegations are true, their actions were not directed at the plaintiff.

▮ Srinivas fails to allege conscience-shocking behavior on the part of Flynn or Howard in connection with the termi-

nation. Both allegedly made "false and/or misleading statements" during the course of the investigation. It is alleged that Flynn filed baseless complaints against Srinivas and subverted her reforms, and that Howard intimidated employees and resisted the plaintiff's policies. For the reasons discussed above, none of the foregoing is sufficient to state a claim for a substantive due process violation.

Therefore, Count I should be dismissed as to Flynn and Howard.[2]

## B. Count II: Deprivation of Liberty

▮ To state a claim based on a deprivation of a constitutionally-protected liberty interest under the due process clause, one must allege an "injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir.2003). "In an action based on a termination from government employment, a plaintiff must satisfy three elements in order to demonstrate a deprivation of the stigma component of a stigma-plus claim." *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir.2006).

> *First*, the plaintiff 'must ... show that the government made stigmatizing statements about [her]—statements that call into question [the] plaintiff's 'good name, reputation, honor, or integrity'.... We have also said that statements that 'denigrate the employee's

---

2. While the defendants argue that Srinivas's substantive due process claim is in reality a First Amendment or deprivation of liberty claim, (*see* Skerritt's Reply Pl.'s Opp'n. Mot. Dismiss (Doc. No. 70) at 4), that argument is not persuasive. "[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Velez*, 401 F.3d at 94. First

Amendment retaliation claims by public officials arise in the situation in which an employee speaks out against the employer's policies, unlike the situation here where the plaintiff alleges she was in a position to make substantive changes in the policies and was retaliated against for doing so. *See generally Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). The plaintiff does not make a deprivation of liberty claim for the reasons set forth in Part B, below.

competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a 'significant roadblock in that employee's continued ability to practice his or her profession' will satisfy the stigma requirement.... *Second,* 'a plaintiff must prove these stigmatizing statements were made public'.... *Third,* the plaintiff must show that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment.

*Id.* at 212 (internal citations omitted)(emphasis in original).

 The first element would be satisfied if the statements were made to "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in the employee's continued ability to practice his or her profession." *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 630–631 (2d Cir.1996). "It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Roth,* 408 U.S. at 575, 92 S.Ct. 2701 (citation omitted). *See Taravella v. Wolcott,* Civil Action No. 3:04 CV 895(CFD), 2008 WL 747668 (D.Conn.2008) (no roadblock when plaintiff was hired for essentially the same position from which she was terminated in a different city).

 The plaintiff has not plead facts sufficient to support a conclusion that her reputation was damaged to the extent that it has placed a "a significant roadblock in [her] ... continued ability to practice ... her profession." *Segal,* 459 F.3d at 212. The plaintiff has alleged in conclusory terms that her reputation has been "damaged," (Am. Compl. at ¶ 86), and that the defendants' actions led to the "destruction

of her career." (Am. Compl. at ¶ 88). Nowhere does she allege facts that could show she has been prevented from pursuing her career because of stigmatizing statements made by any of the defendants.

 Assuming, *arguendo,* that Srinivas had sufficiently plead a stigma-plus claim, "the appropriate remedy for a stigma-plus claim ... is a post-deprivation name-clearing hearing." *Segal,* 459 F.3d at 214 (2d Cir.2006)(internal citation and quotation marks omitted). "[T]he remedy mandated by the Due Process clause for deprivation of a liberty interest is an opportunity to refute the charge, to provide the person with an opportunity to clear his name." *Gordon,* 84 F.Supp.2d at 312 (citation omitted). Here, Srinivas was afforded a name clearing hearing in accordance with the City Charter, and therefore her deprivation of liberty claim fails in any event.

Therefore, Count II of the Amended Complaint should be dismissed as to all defendants.

### C. Count III: § 1985(3)

 "Generally, section 1985(3) prohibits conspiracies to deprive persons of equal protection of the laws." *Goins v. Lantz,* No. 3:07–cv–1542 (AWT), 2008 WL 4425912, at *3 (D.Conn.2008). In order to state a claim under § 1985(3):

the plaintiff must allege ... four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828–829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Furthermore, the alleged conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidious[ ] discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

 Here, the plaintiff has not alleged any racial, or otherwise class-based discrimination. Instead, the plaintiff asks the court to focus on the "nature of the rights deprived by the defendants' conspiracy." (Opp'n. Picard's Mem. at 12.) "The constitutional shoals that would lie in the path of interpreting [§ ] 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose-by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment." *Griffin,* 403 U.S. at 102, 91 S.Ct. 1790. The purpose of the statute is to protect individuals who have been the victims of class-based, invidious discrimination or animus, and the plaintiff has not alleged any such animus.

Therefore, Count III of the Amended Complaint should be dismissed as to all defendants.

### D. Qualified Immunity

 The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* ⸺ U.S. ⸺, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

 There is a two-part test for resolving questions of qualified immunity at the motion to dismiss stage. "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. . . . Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson,* 129 S.Ct. at 815–816, *citing Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "[W]hile the sequence set forth [in *Saucier* ] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 819.

The plaintiff has presented sufficient facts to allege a violation of her substantive due process rights by Skerritt and Jacqua. As discussed above, Skerritt and Jacqua's alleged participation in Cintron's making an unfounded complaint to the Union that Srinivas assaulted her constituted a common effort to disseminate an intentional and malicious fabrication for the purpose of depriving the plaintiff of her job.

 In addition to alleging facts that would constitute a violation of a constitutional right, the plaintiff must also show that the right was clearly established. "Clearly established" means that "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have

understood from the existing law that [her] conduct was unlawful.'" *Anderson v. Recore,* 317 F.3d 194, 197 (2d Cir.2003), *quoting Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998)(alterations in original). "Ultimately, '[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct.'" *Velez,* 401 F.3d at 100, *quoting McCullough v. Wyandanch Union Free Sch.,* 187 F.3d 272, 278 (2d Cir.1999).

*Velez* was decided in 2005. *Natale,* the case from which *Velez* quotes the "intentional and malicious fabrications" language, was decided in 1999. The alleged conduct by Skerritt and Jacqua's took place in July of 2006. Therefore, at the time of the alleged conduct, the "contours [of the right were] sufficiently clear that a reasonable official would understand that what [she was] doing violated that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Therefore, the motion to dismiss Count I as to Skerritt and Jacqua on the basis of qualified immunity should be denied.

## IV. *CONCLUSION*

For the reasons set forth above, John Picard's Motion to Dismiss (Doc. No. 54) is hereby GRANTED, and the Motion to Dismiss (Doc. No. 53) filed by the remaining defendants is hereby GRANTED in part and DENIED in part. All claims against Corbally, Morrissey, Sandella, Burns, McMahon, Flynn, and Howard are dismissed, and Count II and Count III are dismissed as to Skerritt and Jacqua. The sole remaining claim is Count I as to Skerritt and Jacqua.

It is so ordered.