**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**April 19, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

WELLS FARGO BANK, N.A.,

    Plaintiff - Appellee,

v.

MESH SUTURE, INC.; MARK A.
SCHWARTZ,

    Defendants - Appellants,

v.

RANDA DUMANIAN; GREGORY A.
DUMANIAN; ADOM DUMANIAN,

    Defendants - Appellees,

and

ZABELLE CROSSON,

    Intervenor Defendant - Appellee.

No. 21-1262

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:19-CV-03218-PAB-GPG)**
_____

Submitted on the briefs:*

_____

    * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Mark A. Schwartz, MS Law Group, LLC, Dorado, Puerto Rico, for Defendants-Appellants.

Christopher J. Dawes, Esther H. Lee, Fox Rothschild LLP, Denver, Colorado, for Plaintiff-Appellee Wells Fargo Bank, N.A.

Matthew E. Johnson, Dowd Bennett LLP, Denver, Colorado, for Defendants-Appellees Gregory Dumanian, Randa Dumanian, and Adom Dumanian.

Kenzo Kawanabe, Claire Mueller, Davis Graham & Stubbs LLP, Denver, Colorado, for Intervenor Defendant-Appellee Zabelle Crosson.

_____

Before **HARTZ**, **BACHARACH**, and **McHUGH**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

Plaintiff Wells Fargo Bank filed this statutory-interpleader action after facing conflicting demands for access to the checking account of Mesh Suture, Inc. Mark Schwartz, an attorney who founded Mesh Suture with Dr. Gregory Dumanian, was named as a claimant-defendant in the interpleader complaint but was later dismissed from the case after the district court determined that he had disclaimed all interest in the checking account. The district court ultimately granted summary judgment to cofounder Dr. Dumanian as the sole remaining claimant to the bank account, thereby awarding him control over the funds that remained.

Mr. Schwartz appeals, contending (1) that the district court lacked jurisdiction over the case because (a) there was not diversity of citizenship between him and Dr. Dumanian and (b) the funds in the checking account were not deposited into the court registry, (2) that he did not disclaim his fiduciary interest in the checking account,

and (3) the award of funds to Dr. Dumanian violated various rights of Mesh Suture. Wells Fargo contends that Mr. Schwartz's disclaimer deprives him of standing to appeal under Article III of the United States Constitution. We reject all these contentions by Mr. Schwartz and Wells Fargo. We have appellate jurisdiction because Mr. Schwartz has standing to pursue his assertions that he did not disclaim his interest in the Wells Fargo account and that he was improperly denied rights of control over that account. We hold that the district court had jurisdiction because there was the requisite diversity of citizenship and the funds in the checking account were in effect deposited into the court registry when the court appointed a receiver as its agent to handle the funds. And on the merits we hold that the district court did not abuse its discretion when it held that Mr. Schwartz disclaimed all his interests in the checking account. As for the claim that the rights of Mesh Suture were violated, we hold that Mr. Schwartz cannot challenge the alleged violations of Mesh Suture's rights because the district court refused to allow him to act as Mesh Suture's attorney, and he has not challenged that decision on appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

Mesh Suture was founded to develop and commercialize Duramesh Suturable Mesh, a surgical technology used to suture injuries. In August 2017 Mr. Schwartz opened an account for Mesh Suture at a Wells Fargo branch in Colorado. He was the sole signatory on the account and was listed on the account application as being the sole owner of Mesh Suture. By 2019 Mr. Schwartz had assumed the role of Mesh

Suture's chief executive officer and Dr. Dumanian served as the company's chief medical officer and chair of the board of directors.

The record does not explain the origins of the dispute between Mr. Schwartz and Dr. Dumanian. It is sufficient for our purposes to note that on August 31, 2019, Dr. Dumanian purported to fire Mr. Schwartz as CEO. Three days later, Mr. Schwartz, allegedly to extract a concession from Dr. Dumanian, transferred the entire balance of Mesh Suture's Wells Fargo account ($3,929,135.89) into a non-Wells Fargo account held by Sulion LLC, which he controlled. After another three days, allegedly having obtained the concession, Mr. Schwartz transferred the same amount back into Mesh Suture's account from a non-Wells Fargo account held by Tax Lien Law Group LLP, which Mr. Schwartz also controlled. Wells Fargo learned of the control dispute and restricted the access of all parties to the account on September 17. To enable Mesh Suture to continue to operate, seven payments totaling more than $460,000 were made from the restricted account with the parties' joint permission.

In November 2019 Wells Fargo filed an interpleader complaint under 28 U.S.C. § 1335 in the United States District Court for the District of Colorado. Wells Fargo sought to deposit the remaining account balance of $3,363,839.40 into the registry of the court to allow Mr. Schwartz and Dr. Dumanian to litigate control of the funds.[1] When Wells Fargo filed suit, there were separate (non-interpleader)

---

[1] Randa Dumanian and Adom Dumanian—Dr. Dumanian's wife and son— were also named as claimants-defendants in the interpleader complaint. But they both disclaimed any interest in the Wells Fargo account and do not challenge the construction of their disclaimers. In addition, Mesh Suture itself was named as a

actions relating to the dispute that were pending in Illinois federal district court and Colorado state court.[2]

Later that month Dr. Dumanian filed an emergency motion to appoint a receiver to manage the Mesh Suture bank account during the pendency of the interpleader action. Mr. Schwartz did not file a timely response. The magistrate judge issued a written order granting the motion in February 2020, crediting Dr. Dumanian's allegation "that there has been mismanagement or diversion of funds from the Account and there is an imminent danger that the funds will be lost, concealed, or diminished in value if a receiver is not appointed." Aplt. App. at 93. The court directed the receiver to "take physical possession of, manage, and operate the Mesh Suture Account that resides at Wells Fargo." *Id.* at 94. It also ordered the receiver to "pay essential bills and invoices which are necessary to keeping the headquarters running until the control dispute is resolved." *Id.* at 95. The court stated

---

claimant-defendant, but the district court determined that the company was not a "genuine claimant" since it could not make "a claim to the account that is independent of either [Mr.] Schwartz or Dr. Dumanian, as they are the parties fighting for control of Mesh Suture." Aplt. App. at 145. Mr. Schwartz challenges this finding on appeal but, as we later explain, lacks standing to do so. Intervenor Zabelle Crosson, who is a member of Mesh Suture's board of directors, has not asserted any interest in controlling the Mesh Suture account at Wells Fargo. Accordingly, we limit our review to the dispute between Mr. Schwartz and Dr. Dumanian.

[2] In January 2020 Mr. Schwartz filed a Chapter 11 bankruptcy petition on Mesh Suture's behalf. That petition was dismissed by the United States Bankruptcy Court for the District of Puerto Rico in February 2020 "because it lacked a bankruptcy purpose as Mesh Suture was solvent and the case was essentially a two-party dispute among shareholders, which was already the subject of on-going litigation stateside." Aplee. App. (Wells Fargo Bank (WFB)) at 247.

that the receiver was to discharge his duties "subject to the supervision and exclusive control of this Court," and "as an officer of this Court." *Id.* at 95–96.

On April 10, 2020, Wells Fargo filed a motion to interplead funds in which it sought to either deposit the remaining account balance into the court's registry or disburse the funds to a financial institution selected by the receiver, and thereby be discharged from any liability with respect to the disputed funds. The motion noted that Mr. Schwartz opposed depositing the funds in the court's registry, quoting him as saying in an email that "there is no way to make day to day payments from a court registry." Aplee. App. (Wells Fargo Bank (WFB)) at 156 (internal quotation marks omitted). The magistrate judge denied Wells Fargo's motion without prejudice on the ground that "depositing the funds into the Court's registry would significantly hinder Mesh Suture's ability to function and annihilate the Receiver's ability to manage Mesh Suture's daily financial affairs while the parties continue the corporate governance dispute." Aplt. App. at 120–21.

On April 24 Mr. Schwartz filed a disclaimer of interest in which he "**disclaim[ed]** any and all personal rights, title, lien, claim or interest in Mesh Suture's Wells Fargo bank account . . . , for the reason that the Account belongs to a single claimant, . . . **Mesh Suture**." Aplee. App. (WFB) at 227. That same day he filed two other pleadings. One was an answer to the interpleader complaint in which he said that he had "disclaimed interest in the Account which belongs to a single claimant, . . . Mesh Suture," *id.* at 241, and therefore "denies that there is any possibility for Wells [Fargo] to face multiple liability over the Account," *id.* at 244

(emphasis omitted). The second additional pleading was a motion in opposition to Wells Fargo's motion to interplead funds, which was also based on his disclaimer and the assertion that the only claimant was Mesh Suture. In early May, Mr. Schwartz pursued the same point by moving to dismiss the interpleader suit for lack of subject-matter jurisdiction. Again he argued that, by reason of his disclaimer, he was no longer a claimant to the funds in the Wells Fargo account, that the sole claimant was Mesh Suture, and that therefore the statutory requirement of two or more adverse claimants with diverse citizenship was no longer satisfied.

In March 2021 the district court dismissed Mr. Schwartz from the action on the ground that he had disclaimed all interest in the Wells Fargo account through his answer to the interpleader complaint. Because of his dismissal, the court dismissed as moot his motion to dismiss for lack of subject-matter jurisdiction. The court later granted summary judgment to Dr. Dumanian as the "only remaining claimant identified by Wells Fargo in this interpleader action." Aplt. App. at 168. By order dated July 21, 2021, the district court directed the court-appointed receiver to deliver all remaining funds—after paying outstanding fees and costs of the receiver and his attorney—to the court registry. The court further instructed the court clerk, upon the interpleading of the funds, to disburse the funds to Dr. Dumanian. The court ordered the case closed. On July 23 the receiver tendered $1,151,751.05 as a "Treasury Registry Deposit" for Mesh Suture. *Id.* at 217.

## II.    DISCUSSION

### A.    Appellate Standing

Wells Fargo argues that because of Mr. Schwartz's disclaimer of interest filed in the district-court proceedings, he has no further interest or legal standing in the action. We disagree.

"The standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997). The three elements of constitutional standing are injury, causation, and redressability. *Devlin v. Scardelletti*, 536 U.S. 1, 6–7 (2002). In the context of appellate standing, "[w]e commonly describe the injury element by saying that the appellant must be aggrieved by the order from which appeal is taken." *Frank v. Crawley Petroleum Corp.*, 992 F.3d 987, 993 (10th Cir. 2021) (internal quotation marks omitted); *see also In re Michigan-Ohio Bldg. Corp.*, 117 F.2d 191, 193 (7th Cir. 1941) ("[A] party has an appealable interest only when his property may be diminished, his burdens increased or his rights detrimentally affected by the order sought to be reviewed."). If there is an injury sufficient to confer appellate standing, then the causation and redressability requirements will ordinarily be satisfied as well. *See, e.g.*, *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2195–96 (2020) ("That injury is traceable to the decision below and would be fully redressed if we were to reverse the judgment of the Court of Appeals.").

Mr. Schwartz challenges the district court's construction of his disclaimer. Before the commencement of this suit, Mr. Schwartz was the sole signatory on the Wells Fargo account and had unilateral access to the nearly four million dollars in the account. At the conclusion of the litigation—as a consequence of the district court's orders construing the scope of his disclaimer, dismissing him from the lawsuit, and awarding the stake to Dr. Dumanian as the sole remaining claimant to the account— Mr. Schwartz had no access to the account or the roughly one million dollars that were left over. If Mr. Schwartz is correct that his disclaimer was misconstrued and he is entitled to control the account, then he was aggrieved by the district court's orders insofar as he has been wrongly deprived of all rights in the account. At a minimum, he has standing to appeal those orders. *See Ergo Sci., Inc. v. Martin*, 73 F.3d 595, 597 (5th Cir. 1996) (an interpleader claimant had standing to appeal where "the very issue on appeal is whether [the claimant] has waived its interest in the interpleaded funds or not").

### B.    Subject-Matter Jurisdiction

Before resolving the merits of any of Mr. Schwartz's claims, we must address his challenges to our subject-matter jurisdiction. *See In re C & M Props., L.L.C.*, 563 F.3d 1156, 1161 (10th Cir. 2009). He presents two arguments against the district court's jurisdiction under the interpleader statute. First, he claims that the statute's minimal-diversity requirement was not satisfied. Second, he argues that the district court never acquired jurisdiction because Wells Fargo did not deposit the disputed funds into the court registry until after the case was closed. We review de novo the

district court's determination that it had subject-matter jurisdiction, *see Leathers v. Leathers*, 856 F.3d 729, 749 (10th Cir. 2017), but review its findings of jurisdictional facts for clear error, *see Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020).

The pertinent text of the interpleader statute provides that:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, . . . if

(1) *Two or more adverse claimants, of diverse citizenship* as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) *the plaintiff has deposited such money or property* or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation *into the registry of the court*, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

28 U.S.C. § 1335 (emphasis added). (A federal court that otherwise has jurisdiction over a case may also consider an interpleader claim under Federal Rule of Civil Procedure 22.[3])

---

[3] Interpleader under Rule 22, often referred to as rule interpleader, provides the same essential remedy as statutory interpleader: "Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). Rule 22 provides that the remedy "is in addition to—and does not supersede or limit—the remedy provided" by statute, and that statutory-interpleader actions "must be conducted under these rules." *Id.*

We begin with the diversity requirement. A statutory-interpleader action requires only minimal diversity—"that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967). We conclude that jurisdiction was established by the diversity of citizenship between Mr. Schwartz and Dr. Dumanian.

Mr. Schwartz challenges the district court's finding that Dr. Dumanian was domiciled in (and therefore a citizen of) Illinois, rather than Puerto Rico. The district court found that Dr. Dumanian was an Illinois citizen based on his declaration stating:

> [H]e: (1) has resided in Chicago, Illinois, since July 1, 1996; (2) has been employed by Northwestern University since July 1, 1996; (3) bought his current home, located in Chicago, Illinois, in 1997; (4) has been registered to vote in Cook County, Illinois, since 1996; (5) has filed state taxes in Illinois for over 20 years; (6) only owns personal property, including a vehicle, located in Illinois; (7) has an Illinois driver's license; (8) has registered his vehicle in Illinois; and (9) maintains [bank accounts] and credit cards in Illinois.

---

22(b). But subject-matter jurisdiction in a rule-interpleader action is premised on the general federal-question and diversity statutes. *See* 28 U.S.C. §§ 1331, 1332. In a diversity case that means that there must be complete diversity between the stakeholder and the claimants, and that the amount-in-controversy requirement in 28 U.S.C. § 1332 applies—not the $500 floor set by 28 U.S.C. § 1335. *See* 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1703, at 587–88 (4th ed. 2019). Although rule interpleader does not require a deposit or bond to sustain jurisdiction, it does not share the benefit of the special venue and nationwide-service-of-process provisions available in statutory interpleader. *See id.*; *see also* 28 U.S.C. §§ 1397, 2361.

Aplee. App. (WFB) at 147. Mr. Schwartz's only response is to point to what he characterizes as Dr. Dumanian's "sworn attestation[] of domicile [in Puerto Rico] when [he] accepted . . . tax grants issued by the Commonwealth of Puerto Rico." Aplt. Reply Br. at 2. Mr. Schwartz is correct that Dr. Dumanian submitted an application for tax benefits provided by Puerto Rico, but the application did not require the applicant to be a citizen at the time of the application—benefits were available once the applicant became a resident. Dr. Dumanian said that he never accepted the grant money, and the district court found that Mr. Schwartz "offer[ed] no evidence that Gregory Dumanian ever became a resident of Puerto Rico or accepted the benefits of the Tax Grant." Aplee. App. (WFB) at 148. We reject Mr. Schwartz's unsupported, conclusory allegations to the contrary.

There remains the question of Mr. Schwartz's citizenship.[4] The record is devoid of any evidence that Mr. Schwartz was a citizen of Illinois as was Dr. Dumanian. Mr. Schwartz was either a citizen of Puerto Rico (by his own admission)

---

[4] The basis for the district court's finding of the minimal diversity required by § 1335 was that "Dr. Dumanian, a citizen of Illinois, and *Mesh Suture*, a citizen of Puerto Rico, were diverse." Aplt. App. at 143 (emphasis added). But this was the same order in which the district court ruled that Mesh Suture was not a genuine claimant in the interpleader proceedings. And if Mesh Suture was never an adverse claimant vis-à-vis Dr. Dumanian, it is doubtful that diversity could be based on Mesh Suture's citizenship. *See Gen. Atomic Co. v. Duke Power Co.*, 553 F.2d 53, 58 (10th Cir. 1977) (a party that was not a "genuine claimant" could not be an adverse claimant for purposes of establishing statutory-interpleader jurisdiction). Nevertheless, "we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011).

or Colorado (as alleged in Wells Fargo's complaint). Either way he was diverse from Dr. Dumanian. And, at least at the time that Wells Fargo filed its complaint, Mr. Schwartz and Dr. Dumanian were adverse claimants. Jurisdiction is determined from the facts at the time of filing, and Mr. Schwartz's later disclaimer of interest and dismissal from the suit did not divest the district court of jurisdiction. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." (internal quotation marks omitted)); *Auto Parts Mfg. Miss., Inc. v. King Constr. of Hous., L.L.C.*, 782 F.3d 186, 193–94 (5th Cir. 2015) ("The district court's interpleader jurisdiction is determined at the time the interpleader complaint is filed."); *Leimbach v. Allen*, 976 F.2d 912, 916–17 (4th Cir. 1992) (dismissal before final judgment of stakeholders from interpleader suit under Federal Rule of Civil Procedure 22 did not destroy jurisdiction even though the remaining parties (the claimants) were nondiverse).

We now turn to Mr. Schwartz's contention that the interpleader deposit requirement—that the stakeholder deposit the money or property "into the registry of the court, there to abide the judgment of the court," 28 U.S.C. § 1335(a)(2)—was not satisfied until the case was closed. Under this court's precedent, the deposit requirement is jurisdictional. *See Miller & Miller Auctioneers, Inc. v. G.W. Murphy Indus., Inc.*, 472 F.2d 893, 895 (10th Cir. 1973); *see also U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 210 (3d Cir. 1999) (Alito, J.) ("A proper deposit or bond is a jurisdictional prerequisite to bringing an interpleader."). We reject this

challenge of Mr. Schwartz to the district court's jurisdiction. As we proceed to explain, it was sufficient for statutory-interpleader purposes that the district court appointed a receiver who, as ordered by the court, took possession of and managed the account.

To assist us in determining the meaning of *deposit into the registry of the court*, a legal term of art, we first review the historical context. Interpleader emerged in the fourteenth century "as a device that could be used by a defendant in a limited number of circumstances for protection from double vexation upon a single liability" and evolved to become "an affirmative remedy to be used against multiple claimants seeking relief upon a single obligation." 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1701, at 574–75, 574 n.2 (4th ed. 2019). A stakeholder, faced with competing demands to property in his possession, could file a strict bill of interpleader in which he "asserted no interest in the debt or fund,[5] the amount of which he placed at the disposal of the court and asked that the rival claimants be required to settle in the equity suit the ownership of the claim among themselves." *Texas v. Florida*, 306 U.S. 398, 406 (1939). This procedure

---

[5] It should be noted, however, that equity might permit a plaintiff who claimed an interest in the property or fund to proceed via a "bill in the nature of interpleader." *Texas*, 306 U.S. at 406–07; *see also* 7 *Federal Practice and Procedure* § 1701, at 576 (noting that such a bill could be employed "if one of the . . . requirements for a strict bill of interpleader was lacking," but only if "there was an independent basis for equitable jurisdiction"). The interpleader statute addresses both strict interpleader actions and actions in the nature of interpleader. *See* 28 U.S.C. § 1335(a); *AmGuard Ins. Co. v. SG Patel & Sons II LLC*, 999 F.3d 238, 246 (4th Cir. 2021).

allowed the stakeholder to avoid "the expense and risk of defending two actions."

Zechariah Chafee, Jr., *Modernizing Interpleader*, 30 Yale L.J. 814, 814 (1921).

Indeed, the stakeholder avoided almost all expense because it was entitled to recover

its attorney fees and costs. *See Mutual Life Ins. Co. of N.Y. v. Bondurant*, 27 F.2d

464, 465 (6th Cir. 1928). As an equitable proceeding, the interpleader action was

tried to a judge rather than a jury. *See Liberty Oil Co. v. Condon Nat'l Bank*, 260

U.S. 235, 244 (1922) (issue in interpleader was equitable matter not within "that class

of issues in which there must have been a jury trial under the Seventh Amendment").

Apparently out of concern that an obligor to a single claimant could try to

obtain the advantages of interpleader procedures by manufacturing a phony second

claimant,[6] the courts imposed several safeguards. Among these were: "(1) If one of

the two claims is clearly groundless, relief will not be granted." Chafee, *Modernizing*

*Interpleader*, *supra*, at 819. "(2) The applicant must accompany his bill with an

affidavit that the bill was not filed in collusion with any claimant or at his request,

but that his only intent in seeking equitable relief is to avoid being sued or molested

by the claimants." *Id.* at 820. And "(3) The *res* must be put in court or held at the

---

[6] Professor Chafee, recognized as the "father of the federal interpleader statute," *Cory v. White*, 457 U.S. 85, 101 (1982) (Powell, J., dissenting), put it this way: "The obligor must not be allowed to prevent legal proceedings by a claimant who has some case, through trumping up a second baseless claim to the same obligation. He may not shift the burdens of litigation to a dummy. If the applicant is subject to only one danger of suit and liability, he has no more right to equitable protection tha[n] any other defendant in an action at law." Chafee, *Modernizing Interpleader*, *supra*, at 819–20.

15

disposition of the court." *Id.* Professor Chafee expressed his view that these requirements "are sound and grow out of the inherent nature of the remedy of interpleader." *Id.* at 821.

In keeping with this tradition, the original federal interpleader statute of 1917, which allowed only insurance companies and fraternal beneficiary societies to bring statutory-interpleader actions, required the stakeholder to deposit the "amount of [the] insurance or benefits with the clerk of court." Act of February 12, 1917, Pub. L. No. 64-346, 39 Stat. 929, 929.[7] The statute was amended in 1925 to specify that the deposit be paid "into the registry of the court." Act of February 25, 1925, Pub. L. No. 68-465, 43 Stat. 976, 976. But this rewording was not listed by Professor Chafee as one of the "principal differences" between the 1917 act and the 1925 revision. Zechariah Chafee Jr., *Interpleader in the United States Courts*, 41 Yale L.J. 1134, 1163–64 (1932). That requirement has continued in later revisions, although since 1936 the stakeholder has had the alternative of posting a bond.

One may question the necessity of the deposit requirement because interpleader under Federal Rule of Civil Procedure 22 has apparently worked well without the requirement. *See* 7 *Federal Practice and Procedure* § 1716, at 704–05 (referring to the requirement as "essentially . . . a minor matter"). But we cannot

---

[7] It was proposed that "an offer to deposit the money should be sufficient to give jurisdiction, but this was changed in committee to require actual deposit." Zechariah Chafee, Jr., *Interpleader in the United States Courts*, 41 Yale L.J. 1134, 1161 n.92 (1932).

ignore the statutory language. *See Acuity v. Rex, LLC*, 929 F.3d 995, 1001 (8th Cir. 2019). Under that language the plaintiff-stakeholder typically will transfer custody of the cash or other property to the clerk of the court, whose management of registry funds is well-regulated. *See* 13 Guide to Judiciary Policy, ch. 9 (2021). That does not mean, however, that we must adopt a strict hypertechnical interpretation of the deposit requirement —such as Mr. Schwartz's view that the money in the Wells Fargo account had to be deposited into an account held by the court clerk—that serves no apparent purpose. From what little has been said about the requirement, we conclude that it is designed simply to transfer control of the property or funds from the stakeholder to the court, thereby indicating the good faith of the stakeholder in bringing the action and, perhaps, "ensur[ing] that the court will be able to issue an effective order disposing of the property." 7 *Federal Practice and Procedure* § 1716, at 704.

More importantly, our conclusion conforms to the traditional understanding of *deposit into the registry of the court*. For the following reasons, we conclude that transferring the Wells Fargo account to the receiver, appointed as an officer of the court, complied with the statutory requirement. That is, the deposit requirement of § 1335 is satisfied when the plaintiff-stakeholder, as authorized by the court, places the property that is the subject of the dispute into the custody of an officer of the court, such as a receiver.

We begin with the leading legal dictionary. There we find *deposit in court* defined as "[t]he placing of money or other property that represents a person's

17

potential liability in the court's temporary custody, pending the outcome of a lawsuit.—Also termed *deposit into court*; *deposit into the registry of the court*." Black's Law Dictionary 553 (11th ed. 2019). The equivalence of *deposit in court* and *deposit into the registry of the court* is consistent with the substitution of the language "into the registry of the court" in the 1925 revision of the federal interpleader statute for the language "with the clerk of . . . court" in the 1917 statute.[8] We have found no suggestion that this language change was intended to have any substantive consequences. On the contrary, as noted above, when Professor Chafee discussed the "principal differences" between the 1917 and 1925 statutes, he omitted any mention of that change. Chafee, *Interpleader in the United States Courts*, *supra*, at 1163–64.

Further, it has long been recognized that money is "deposited in court" so long as it is subject to the court's control. More than 200 years ago Justice Story wrote in

---

[8] The 1917 act provided:

> That the district courts of the United States shall have original cognizance to entertain suits in equity begun by bills of interpleader where the same are filed by any insurance company or fraternal beneficiary society, duly verified, and where it is made to appear by such bill . . . that such company or society *deposits the amount* of such insurance or benefits *with the clerk of said court* and abide the judgment of said court.

39 Stat. at 929 (emphasis added). The 1925 revision provided:

> That the district courts of the United States shall have original jurisdiction to entertain and determine suits in equity begun by bills of interpleader, duly verified, filed by any insurance company or association or fraternal or beneficial society, and averring . . . that such company, association, or society has *paid the amount thereof into the registry of the court*, there to abide the judgment of the court.

43 Stat. at 976 (emphasis added).

an admiralty case that "[m]oney deposited in court" means "money, which is deposited subject to the order of the court, be it in whose actual possession it may, whether of a bank or of an officer of the court." *Ex parte Prescott*, 19 F. Cas. 1283, 1285–86 (Story, Circuit Justice, C.C.D.N.H. 1814) (No. 11,388); *see also* 2 Judicial and Statutory Definitions of Words and Phrases at 1999–2000 (West 1904) ("'Deposited in court,' as used in 1 St. 625, c. 119, providing that in all cases of admiralty jurisdiction the clerk of the District Court shall be entitled to a certain percentage on all moneys deposited in court, means money which is deposited subject to the order of the court, whether it be in the actual possession of the court or a bank, or of an officer of the court. It is not limited to money brought in and deposited, sedente curia [during the court sitting], in the actual manual possession of the court. It includes money deposited in the bank subject to the order of the court." (citing *Ex parte Prescott*)).

Court-appointed receivers are officers of the court and may be empowered to assume the control, custody, and management of property involved in litigation. *See* 28 U.S.C. § 754; *United States v. Solco I, LLC*, 962 F.3d 1244, 1246 (10th Cir. 2020). When a court appoints a receiver, "[t]he money in his hands is in *custodia legis* for whoever can make out a title to it." *Atl. Tr. Co. v. Chapman*, 208 U.S. 360, 371 (1908). That is, the money is "[i]n the custody of the law. . . . [It has been] taken into the court's charge during pending litigation over it." Black's Law Dictionary 917 (11th ed. 2019) (defining *in custodia legis*); *see id.* at 484 (defining *custody of the law* as "[t]he condition of property . . . being under the control of legal authority (as a

19

court or law officer)"). "[I]t is the court itself which has the care of the property in dispute. The receiver is but the creature of the court." *Atl. Trust Co.*, 208 U.S. at 371; *see id.* ("[T]he possession of the receiver is the possession of the court." (internal quotation marks omitted)); *id.* at 370 ("[T]he property," upon appointment of the receiver, "passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer or creature, the receiver."); *see also* Alva R. Hunt, *A Treatise on the Law of Tender, and Bringing Money Into Court* § 516, at 605 (1903) ("The possession of the money by the clerk, or the officer or depositary, where properly paid in, is that of the court; as much so as is the possession by the clerk of the records and files of the court.").

Here the district court secured possession of, and exclusive control over, the Wells Fargo account through its receiver. The disputed property was thereby deposited with the court, at its disposal, and ready to be distributed to the prevailing claimant. This was a sufficient deposit for the purposes of establishing statutory-interpleader jurisdiction.

### C.    Mr. Schwartz's Disclaimer

We now turn to Mr. Schwartz's contention that he did not disclaim all interest in the Wells Fargo account.

Mr. Schwartz filed a disclaimer of interest with the district court in which he "**disclaim[ed]** any and all *personal* rights, title, lien, claim or interest in Mesh Suture's Wells Fargo bank account . . . which is the **Res** that is the subject matter of the above-captioned Interpleader action filed by Plaintiff, Wells Fargo." Aplee. App.

(WFB) at 227 (italics added). Mr. Schwartz claims that the district court erroneously construed this as an unlimited disclaimer, when in reality it was only a partial disclaimer because it was limited to his *personal* rights and interests in the account. He argues that he "did not . . . disclaim his corporate fiduciary power as an officer, director, corporate counsel, and account signatory to administer and control the Account on the Company's behalf." Aplt. Br. at 24.

The district court, however, relied on Mr. Schwartz's answer to the interpleader complaint—not just the disclaimer he separately filed—in finding that he had disclaimed all interest in the account. The format for Mr. Schwartz's answer was to quote a paragraph of the complaint and then provide a one-paragraph response. The relevant paragraphs are as follows:

> [Complaint ¶ 31:] Upon information and belief, the dispute between The Dumanians and Schwartz over control of Mesh Suture— and consequently over the Account and the Restrained Proceeds— continues to this day.
> **ANSWER:** Mr. Schwartz denies the allegations in Paragraph 31 of the Complaint as Mr. Schwartz has **disclaimed interest** in the Account which belongs to a **single claimant**, the Account Owner, **Mesh Suture, Inc.** (See Disclaimer of Interest, attached as **Exhibit 1**).
> . . .
> [Complaint ¶ 38:] At this time there exist rival, adverse, and conflicting claims between the Claimant Defendants as to the Restrained Proceeds.
> **ANSWER:** Mr. Schwartz denies the allegations in Paragraph 38 of the Complaint; Mr. Schwartz has **disclaimed interest** in the Account which belongs to a single claimant, the Account Owner, Mesh Suture, Inc. (See Disclaimer of Interest, attached as **Exhibit 1**).

Aplee. App. (WFB) at 239, 241. Later in his answer Mr. Schwartz reiterated that he had "disclaimed any interest in the Account," so there was no "possibility for Wells

21

[Fargo] to face multiple liability over the Account." *Id.* at 243–44.

That same day, Mr. Schwartz filed a motion in opposition to Wells Fargo's motion to interplead funds, arguing that as the result of his disclaimer, there were no longer two adverse claimants to the account and federal jurisdiction was absent. Less than three weeks later, Mr. Schwartz followed up on his answer and motion by filing a motion to dismiss for lack of subject-matter jurisdiction. In that motion he argued that because he had filed a disclaimer there were not the two or more adverse claimants necessary for statutory-interpleader jurisdiction.

The common thread in Mr. Schwartz's answer, his motion in opposition to Wells Fargo's motion to interplead funds, and his motion to dismiss for lack of jurisdiction was the proposition that his disclaimer eliminated the existence of two or more adverse claimants to the Wells Fargo account. Thus, as recognized by the district court, even if the disclaimer did not eliminate the possibility that Mr. Schwartz was raising a claim based on an alleged fiduciary status with Mesh Suture, the assertions in those three pleadings that there was only one claimant to the account necessarily excluded the possibility that he was a claimant in *any* capacity. His argument in all three pleadings depended on his having *no* interest in the account— personal, fiduciary, or otherwise—so that there was only one remaining claimant to the account.

Mr. Schwartz's effort to defeat jurisdiction failed. His disclaimer ended up being irrelevant in the district court's analysis that it had jurisdiction over the interpleader suit. *See supra* note 4. The magistrate judge, however, relied on the

disclaimer to recommend dismissing Mr. Schwartz from the case, reasoning that he lacked standing as he disclaimed any interest in the Wells Fargo Account. Only then did Mr. Schwartz file his amended disclaimer asserting that he had disclaimed only his personal interest in the account. But the amended disclaimer did not benefit Mr. Schwartz. In the same order in which it recognized that Mr. Schwartz's disclaimer did not defeat its jurisdiction, the district court refused to allow him to renege on his full disclaimer, holding that he remained bound by his answer.

The district court did not abuse its discretion in ruling that Mr. Schwartz's statements in his pleadings were binding judicial admissions that he had no interest in the Wells Fargo account. The Supreme Court has adopted Wigmore's definition of "a judicial admission or stipulation" as an "express waiver made by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 9 John Henry Wigmore, *Evidence in Trials at Common Law* § 2588, at 821 (Chadbourn rev. 1981)). Judicial admissions include "formal concessions in the pleadings" and "are 'not evidence at all but rather have the effect of withdrawing a fact from contention.'" *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (quoting Michael H. Graham, *Federal Practice and Procedure* § 6726 (interim ed.)); *see Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264–65 (4th Cir. 2004) ("Judicial admissions are not . . . limited to affirmative statements that a fact exists. They also include intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law."); 2 Robert P.

23

Mosteller et al., *McCormick on Evidence* § 254 (8th ed. 2020) (Judicial admissions are "formal concessions in the pleadings in the case or stipulations by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."). Thus, the Fifth Circuit has found conclusive a party's admission that it was waiving any physical-injury claims, so the admission "could not be contradicted by [an] affidavit" that alleged physical injury. *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 477 (5th Cir. 2001). In a similar vein the Fourth Circuit has found that a party's admission that it was a fiduciary under the Employee Retirement Income Security Act precluded it from disputing its fiduciary status. *See Meyer*, 372 F.3d at 263–67, 266 n.4.

Mr. Schwartz argues that the district court abused its discretion by not "resolv[ing] any confusion between" his answer and his amended disclaimer to find that he had not disclaimed all his interest. Aplt. Br. at 24. To be sure, "the trial court has discretion to avoid the consequence of conclusiveness of an admission." Wigmore, *supra*, § 2590, at 823; *see also Atlas Glass & Mirror, Inc. v. Tri-N. Builders, Inc.*, 997 F.3d 367, 373 (1st Cir. 2021) ("[D]istrict courts do retain broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases." (internal quotation marks omitted)). But courts will not relieve a party from the conclusive effect of its judicial admission absent "a showing of exceptional circumstances."[9] *Ferguson v. Neighborhood Hous. Servs., of Cleveland,*

---

[9] Although Mr. Schwartz's admission was not elicited by a request for admission, matters admitted in response to a request for admission under Federal

*Inc.*, 780 F.2d 549, 550–51 (6th Cir. 1986) (party was held to an admission in its answer that it was an employer within the meaning of the Fair Labor Standards Act and was prevented from filing a second answer shortly before trial to withdraw the admission); *see also Cadle Co. II, Inc. v. Gasbusters Prod. I Ltd. P'ship*, 441 F. App'x 310, 313 (6th Cir. 2011) ("[A]dmissions made during a deposition, absent exceptional circumstances, have been held to be binding on the parties as a judicial admission."). Two examples of grants of relief are illustrative. In one, the court found it appropriate to relieve a party from the consequences of its admission when intervening events changed the factual context. *See Haggard v. Bank of the Ozarks, Inc.*, 547 F. App'x 616, 618–19 (5th Cir. 2013) (bank was granted relief from an admission in its answer that the unpaid principal on a promissory note was $1.6 million, when several years had passed and the evidence showed that the current balance was no more than $500,000, thereby triggering the guarantor's obligation). In the other case, the district court permitted the plaintiff to withdraw admissions of several allegedly undisputed facts set forth in the defendant's motion for summary

---

Rule of Civil Procedure 36 are treated as "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Thus, "[i]n form and substance a Rule 36 admission is comparable to an admission in the pleadings or a stipulation drafted by counsel for use at trial." *Id.* advisory committee's note to 1970 amendment. The standard for determining whether such an admission may be withdrawn is explicitly provided by Rule 36(b): "Subject to Rule 16(e) [which provides that "the order issued after a final pretrial conference" may be modified "only to prevent manifest injustice"], the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."

judgment. *See Ciacciarella v. Bronko*, 613 F. Supp. 2d 262, 265–67 (D. Conn. 2009) (Kravitz, J.). Because the plaintiff had repeatedly and consistently asserted facts contrary to the admissions, the court believed the assertions of plaintiff's counsel that the plaintiff had played no role in the admissions and that counsel had misinterpreted the statements of undisputed facts as merely alleging what a witness testified to, not to the truth of the matter asserted (an error that the court considered understandable). *See id.* at 266–67. The court said that when an admission "is the result of fraud or mistake, the admission may not necessarily be binding," *id.* at 266 (internal quotation marks omitted), and it granted relief because the defendant would not be prejudiced, *see id.* at 267.

Mr. Schwartz has not cited an exceptional circumstance that would warrant relief from his judicial admission, nor could he: in his answer and other pleadings Mr. Schwartz clearly and deliberately disclaimed any interest in the account, and he relied on his total disclaimer to argue that he was no longer a claimant and that the district court did not have statutory-interpleader jurisdiction. His admission was not the result of his being defrauded or reasonably mistaken. Nor was a reasonable factual admission undermined by later events. Under these circumstances the district court did not abuse its discretion in enforcing the admission in Mr. Schwartz's answer to the interpleader complaint. *See Miller v. Eby Realty Grp. LLC*, 396 F.3d 1105, 1116 (10th Cir. 2005) (reviewing decision to enforce a judicial admission for abuse of discretion).

26

### D.    Mesh Suture's Claims

Mr. Schwartz's remaining arguments are advanced on behalf of Mesh Suture. *See* Aplt. Br. at 19 (claiming that district court never acquired personal jurisdiction over Mesh Suture); *id.* at 20 ("The District Court erred in refusing to treat Mesh Suture, Inc. as a legitimate . . . party-claimant."); *id.* at 20–21 (claiming denial of Mesh Suture's due-process rights and violations of the bankruptcy-court automatic stay); *id.* at 24–26 (raising due-process and equal-protection arguments for Mesh Suture). But the magistrate judge denied Mr. Schwartz's motion to appear on Mesh Suture's behalf. In his opening brief Mr. Schwartz asserts that Mesh Suture was denied "the right to legal representation," *id.* at 21, but otherwise presents no argument (reasoned or otherwise) explaining how the magistrate judge erred in preventing him from representing Mesh Suture given that this entire dispute is fundamentally about who controls the company. We decline to revisit the magistrate judge's resolution of this issue. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."). Because Mr. Schwartz was not authorized to represent Mesh Suture, the appeal he entered on its behalf must be dismissed. *See J.J. Rissell, Allentown, PA Trust v. Marchelos*, 976 F.3d 1233, 1236 (11th Cir. 2020) ("When an appeal is taken on behalf of an artificial entity by someone without legal authority to do so, the appeal should be dismissed.").

## III.    CONCLUSION

We **DISMISS** the appeal entered on behalf of Mesh Suture, Inc. and **AFFIRM** the judgment of the district court.